PATRICK SHERIDAN, RELATOR, v. JOHN McCURNIN, RESPONDENT.

Argued January 16, 1940—Decided April 10, 1940.

494

Before Justices TRENCHARD, CASE and HEHER.

For the relator, *William George.*

For the respondent, *William Rubin.*

The opinion of the court was delivered by

HEHER, J. On November 28th, 1939, relator filed an information in the nature of a *quo warranto* averring, *inter alia,* that respondent McCurnin had usurped the office of "Supervisor of Auto-Buses" of the city of Bayonne, rightfully belonging to relator, and praying for process directing him to show "by what warrant he claims to hold, use and enjoy" the franchise. There was a rule to plead. The plea was not interposed until three days after the expiration of the time limited. On that very day, the clerk, on relator's motion, entered a rule for judgment final adjudging that relator was "rightfully entitled to the office" in question, and to immediate possession and enjoyment thereof, and directing the ouster of respondent. On December 16th ensuing, the instant rule to show cause was allowed.

The motion to vacate the judgment is addressed to the sound discretion of the court; and in the circumstances we should deem it our duty to award such relief were it not that the proofs reveal the judgment is well-based on the merits. Apart from the inherent power of the court to open a default judgment, if its enforcement would defeat the ends of justice as regards the individual litigants, the public interest demands that controversies respecting title to public office be adjudi-

cated on the merits to the end that an intruder be ejected. *Vide Anderson* v. *Meyers,* 77 *N. J. L.* 186.

On July 11th, 1919, the Board of Commissioners of the City of Bayonne (a commission-governed municipality), presumably in the purported exercise of the authority conferred by article XV, section 1, of chapter 152 of the laws of 1917, as amended by chapter 252 of the laws of 1918 (*Pamph. L.* 1917, *pp.* 319, 358; *Pamph. L.* 1918, *p.* 958; now *R. S.* 1937, 40:52-1 *et seq.*), adopted an ordinance entitled "An Ordinance to Regulate and Control the Maintenance and Operation of Auto-Buses and Jitneys." There is no contention that this local legislative action was *ultra vires;* the grant of power so to legislate is not denied. The ordinance lays down an elaborate scheme for the regulation and control of such vehicles. An operating license is prescribed, conditioned, *inter alia,* upon the provision of a liability insurance policy for a designated sum. The vehicular operator is required to be of good character and in sound health, and possessed of the skill and ability requisite for safety in the operation of the vehicle upon the highways. It is provided that the licensed vehicle shall be "mechanically perfect and without faulty construction." Operating rules are set out at length. And there is a levy upon gross receipts as "a monthly franchise tax for revenue for use of the city." Originally, the Director of Revenue and Finance was directed to appoint a "supervisor to manage and control all auto-buses and jitneys and drivers of auto-buses and jitneys;" and such supervisor was clothed with "each and every power" therein "granted to the Director of Revenue and Finance to control, regulate and manage all auto-buses and jitneys," and with authority to "appoint as many inspectors of auto-buses and jitneys and of drivers of auto-buses and jitneys with the approval and consent" of the director "as he shall deem necessary and advisable." The supervisor and inspectors were invested with "full police power." There was no term prescribed for either the supervisor or the inspectors.

The parties seem to be in agreement that thereby an office in the legal sense came into being. The information so treats it, and respondent acquiesces in that view. It is likewise

termed in the stipulation of facts introduced on this motion "in the event" that the court "will hear arguments on the merits * * *." And it would seem that it is properly classable as an "office" in legal intendment. Conceding the State's grant of such authority, the place thus created is of kin to the municipal superintendent of buildings and health inspector considered in *Fredericks* v. *Board of Health*, 82 *N. J. L.* 200.

Subsequently, the appointive authority in respect of the office of supervisor was transferred to the Director of Public Safety. The validity of this action is not challenged. It is stipulated that on May 5th, 1925, the municipal governing body "adopted a resolution transferring the power, authority and duties of the Department of Revenue and Finance relating to the jitney department and auto-bus supervision to the Department of Public Safety."

On February 1st, 1935, the then Director of Public Safety appointed relator to the office of "Supervisor of Auto Buses for a term ending the 31st day of December, 1935, at a salary of $2,300 *per annum*." The appointee assumed the office, and continued in possession thereof without further appointment until June 12th, 1939, when he was notified by the Director of Public Safety that his "services as Supervisor, Auto Bus Department," were "no longer required and said services" were thereby "terminated, as of June 15th, 1939." Immediately thereafter, the director appointed respondent to the office for a term ending on the last day of the year at a like annual salary of $2,300. It is frankly avowed that political considerations and not misbehavior dictated this course.

Relator is an honorably discharged veteran of the World War, and claims the protection of *R. S.* 1937, 38 :16-1.

Concededly, the legislative action embodied in the ordinance under review, if not *ultra vires* the municipality, was within the domain of the Board of Commissioners. Under section 4 of the Commission Government Act (*Pamph. L.* 1911, *p.* 462), as amended by chapter 275 of the laws of 1915 (*Pamph. L., p.* 494), the governing body was invested with "all administrative, judicial and legislative powers and duties" theretofore "had and possessed and exercised by the

mayor and city council and all other executive or legislative bodies" of the municipality, and with "complete control over" its "affairs." There was a direction for the "distribution" of "the executive, administrative, judicial and legislative powers, authority and duties" in municipalities of the class embracing the city of Bayonne "into and among five departments," each headed by one of the commissioners. The duty was also laid upon the governing body to "determine the powers and duties to be performed by each department," and to "assign such powers and duties to the appropriate departments" and "prescribe the powers and duties of all officers and employes * * *." It was empowered to "assign particular officers and employes to one or more departments," and to "require any officer or employe to perform duties in two or more departments," conditioned in a manner not here pertinent, and to "make such other rules and regulations as" might "be necessary or proper for the efficient and economical conduct of the business of the city." It was also directed, "at the first meeting, or as soon as may be after organization," to "create such subordinate boards and appoint such officers as it" might "deem necessary for the proper and efficient conduct of the affairs" of the municipality.

Our court of last resort has ruled that this power of appointment of such officers as may be deemed necessary "for the proper and efficient conduct of the affairs of the city" connotes also the authority to "abolish all pre-existing administrative offices, whether created by the legislature or the municipality, the performance of the duties of which has been assigned by the commission to a governmental department of which such office constitutes no part, and which has no place in the municipal machinery provided for the proper and efficient conduct of municipal affairs under the new scheme of government." *Schmeidler* v. *Atlantic City,* 102 *N. J. L.* 121.

By parity of reasoning, the authority to regulate and control the maintenance and operation of auto-buses, and to create such offices as may be deemed necessary for the achievement of that objective, comprehends the prescription of tenure beyond modification by the commissioner in whom the

power of appointment is vested. If the board possessed the power to create the office—and, as noted, this is granted—so also had it the authority to prescribe the term—a mere incident of the creative power. Here, the ordinance does not delimit the term, nor does it endow the commissioner in charge with such function as appurtenant to the power of appointment. Therefore, at the time of relator's appointment, the "term of office" was not "fixed by law." His term was not co-extensive with that of the governing body: the tenure was rather of the class *durante bene placito*. And so the term was indefinite, and the relator is consequently within the protection of section 38:16-1 of the Revision, *supra*. *Maxwell* v. *Wildwood*, 111 *N. J. L.* 181; *affirmed*, 113 *Id.* 404. His removal in contravention of its provisions was therefore nugatory. The policy of the statute is not to be set at naught through an appointment for a fixed term by the departmental head. There being no fixation of a definite term by the creative authority, the tenure is during good behavior as prescribed in the last cited section of the Revision.

And there is no force to the contention that relator, having "accepted appointment from February 1st, 1935, to December 31st, 1935," thereby "contracted with" the municipality "for his term, and is therefore bound" accordingly, and at the time of his removal was in the category of a "hold-over" officer not entitled to the benefit of section 38:16-1, *supra*— citing *Hardy* v. *Orange*, 61 *N. J. L.* 620; *DeMol* v. *Clifton*, 6 *N. J. Mis. R.* 669; *Giordano* v. *Brady*, 10 *Id.* 832.

The principle enunciated in *Hardy* v. *Orange, supra*, is not applicable here. An office does not rest in contract: its acceptance does not give rise to a contractual relation. *Hoboken* v. *Gear*, 27 *N. J. L.* 265; *Fredericks* v. *Board of Health, supra; Board of Education, Cedar Grove*, v. *State Board of Education*, 115 *Id.* 67. In *Ufert* v. *Vogt*, 65 *Id.* 377; *affirmed, Id.* 621, our court of last resort declared that, where "the term of the office * * * is to be held at the pleasure of the common council," under the municipal charter, "the matter is not one of contract, but one of law," and it was therefore beyond the power of the council to fix a definite term. And in the Supreme Court, Mr. Justice Gum-

mere thus distinguished the Hardy case, *supra:* "An examination of the opinion in the case cited will disclose that its scope has been misapprehended by counsel. The conclusion there was that the appointment of Hardy to the position of keeper of the reservoir at Orange for the period of a year, and his acceptance of that appointment, constituted a contract between him and the municipality. As holder of that position Hardy was not the incumbent of a public office, but a mere employe of the city; the services to be performed by him were not in anywise public or official, but purely of a private nature, and, for this reason, it was considered that his appointment and acceptance constituted a contract, the court following the doctrine laid down by the Supreme Court of Massachusetts in the case of *Chase* v. *Lowell, 7 Gray* 33, so far as it applied to the appointment of municipal agents whose duties were not public or official in their character. But this doctrine has no application in the case of a person holding a public office as distinguished from a position in which the services to be performed are simply of a private nature. The appointment to a public office for a definite term, and the acceptance of such office, bears no analogy to a contract made between the government and an individual. In the latter the terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other. In the former both the rights and privileges as well as the duties of the appointee are prescribed by the government and not by agreement of the parties, and the government (in the absence of constitutional restriction) may at any time, and without the appointee's consent, abridge those rights and privileges or increase those duties, or change their character; or it may put an end to them before the expiration of the term, by abolishing the office." See, also, *Stewart* v. *Freeholders of Hudson,* 61 *N. J. L.* 117, where the post of deputy warden of a county almshouse was held to be a position not subject to contractual fixation of the term so as to render inapplicable a war veterans' tenure act such as the one invoked here. It is to be observed that this case was in the Supreme Court and was decided before the Hardy case, *supra.*

Nor does relator have the status of a "hold-over" officer rather than one having tenure during good behavior within the intendment of section 38:16-1 of the Revision, *supra*. The continuance of relator in the office from December 1st, 1935, until June 12th, 1939, without further appointment for a definite term or otherwise, is indicative of the departmental director's recognition of his lack of capacity as regards the prescription of a definite term. We deem that course of conduct to be the equivalent of an appointment for an indefinite term under the ordinance. Compare *Stewart* v. *Freeholders of Hudson, supra.* The case of *Salter* v. *Burk,* 83 *N. J. L.* 152—not cited by either party—is not to the contrary. There, it was held that an appointment designed to be and in terms temporary merely, covering the transition period upon the adoption of the commission government plan, could not be distorted into the equivalent of an appointment for the three-year term fixed by statute.

It remains to consider whether the judgment is void, in that "it adjudged the relator to be entitled to the office, which is unlawful," since at common law only the title of the respondent could be inquired into, unless the latter put the relator's title in issue—citing *Davis* v. *Davis,* 57 *N. J. L.* 203; *Manahan* v. *Watts,* 64 *Id.* 465; *Magner* v. *Yore,* 75 *Id.* 198.

The principle is without applicancy here. Relator's title has been put in issue on this motion to vacate the judgment. As stated, the parties have joined in a prayer that the court hear and determine the question of the title to the office, and for that purpose the facts have been stipulated. Therein relator's title is directly challenged. It was agreed that "there is no issue or dispute of facts between the parties, and that the respondent, by his attorney, questions solely the legality of relator's right to hold the office of auto bus supervisor after the expiration of the specific term of his original appointment." In *Salter* v. *Burk, supra,* this court declared that "One complaining of the illegality of the election to office of another in his stead must first show that he himself has legal title to it."

The rule to show cause is accordingly discharged, with costs.