# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE EX REL. JEFFREY G. JONES, ET AL., v. BYRON LOOPER

### Direct Appeal from the Chancery Court for Putnam County
### No. 98-450, Robert Summitt, Chancellor

---

### No. M1999-00662-COA-R3-CV - Decided April 7, 2000

---

Byron Looper, the former Property Assessor of Putnam County, appeals the default judgment entered against him in ouster proceedings brought pursuant to Tenn. Code Ann. § 8-47-101, *et seq.* We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded.

COTTRELL, J., delivered the opinion of the court, in which KOCH, J., and CAIN, J., joined.

Jeffrey G. Jones, David Day, and William D. Birdwell, Cookeville, Tennessee, for the appellees, State of Tennessee ex rel. Jeffrey G. Jones, et al.

Chantal M. Eldridge, Cookeville, Tennessee for the appellant, Byron Looper.

## OPINION

Byron Looper, the former Property Assessor of Putnam County, appeals the default judgment entered against him in the underlying action, two consolidated ouster proceedings brought pursuant to Tenn. Code Ann. § 8-47-101, *et seq.* One of the ouster proceedings was filed by the Putnam County Attorney and the other action was filed upon the relation of ten named citizens ("the Relators"). *See* Tenn. Code Ann. § 8-47-110 (1993). For the following reasons, we affirm the judgment of the trial court.

On October 23, 1998, Mr. Looper was arrested and incarcerated on criminal charges of first degree murder and was denied bond after a hearing on November 23. That indictment is relevant to this appeal only because of the issues raised by the fact of his incarceration. However, Mr. Looper was already under indictment for offenses related to acts in office. In a March 1998 indictment, he had been charged with multiple counts of official misconduct.

The two ouster petitions at issue were filed on October 30. Both petitions essentially mirrored the specific factual allegations in the March 1998 indictment, alleging that Mr. Looper had knowingly and willfully committed misconduct in office, knowingly and willfully neglected to perform duties enjoined upon him, and had committed acts which constituted violations of penal statutes involving moral turpitude, all of which are grounds for ouster from office enumerated in Tenn. Code Ann. § 8-47-101. The allegations in support of these grounds include, among other things, (1) arbitrarily reassessing the property of an individual who refused to contribute to Mr. Looper's political campaign fund; (2) allowing certain parcels of land to remain unassessed; (3) removing from the tax roles a parcel of property with the intent to impede the owner's right to serve as a public official or run for public office in the county; (4) failing to deliver the property tax roles to the County Trustee in violation of Tenn. Code Ann. §8-47-101; (5) erroneously classifying certain property under the Agricultural, Forest, and Open Space Land Act of 1997 to obtain a benefit; (6) diverting over ninety (90) hours of paid County employee time to his own use; (7) using County funds to procure a computer program for his personal use and benefit; and (8) using County resources to promote his political aspirations. Both petitions sought a judgment of ouster. Both petitions also alleged that Mr. Looper's incarceration prevented him from performing the duties of Property Assessor and requested the court to declare the office vacant pursuant to Tenn. Code Ann. §§ 8-48-101(4) and 8-48-106. In addition, both Petitioners filed applications for an order of suspension, pursuant to Tenn. Code Ann. § 8-47-116, seeking to suspend Mr. Looper from performing any of the duties of the office of property assessor pending final disposition of the lawsuits.

It is undisputed that the petitions were served on Mr. Looper on October 30, 1998 and November 5, 1998.[1] Attorney Lionel R. Barrett, Jr. filed a notice of appearance on Mr. Looper's behalf on November 10, 1998. However, no answers or other responses to the petitions were filed.

On December 17, 1998, both Petitioners filed motions for default judgment and/or for summary judgment.[2] In relevant part, these filings asserted that Mr. Looper's failure to timely file a response to their petitions within twenty (20) days of service, as required by Tenn. Code Ann. § 8-47-116, entitled Petitioners to a default judgment pursuant to Tenn. R. Civ. P. 55.01.

Notice dated December 17 was sent that a hearing on all the pending motions was set for January 26, 1999. Apparently around Christmas, Mr. Looper discharged Mr. Barrett, informing him that another attorney was handling the case and directing him to forward all files to the specifically named lawyer, Mr. Jerry Burgess. Mr. Barrett filed a motion to withdraw as counsel on January 20, 1999, and it is from the affidavit filed with that motion that we learn the time frame and

---

[1]On November 6, the judge before whom these cases were pending entered an order recusing himself. On November 18, the Chief Justice appointed a special judge to hear these matters.

[2]The motion for summary judgment asked the court to declare the office of Property Assessor vacant due to Mr. Looper's incarceration. This motion was never ruled upon and is not relevant to the issues in this appeal.

circumstances of Mr. Barrett's discharge by Mr. Looper.[3]   Mr. Looper retained his present counsel two days before the hearing.

No response, pleading, or other document was filed by Mr. Looper in this matter until 8:50 a.m. on the day of the 9:00 a.m. January 26 hearing, when Mr. Looper, though counsel, filed, *inter alia,* answers to the petitions and responses in opposition to the motions for summary judgment. These documents were served on opposing counsel moments before and actually during the hearing.

The trial court proceeded with the hearing on the motions for default judgment. At the close of the hearing, the court observed:

> This is a very simple procedure that you take in these matters.  You get served and you answer and all you have to do is just say not guilty or I didn't do it.  You don't have to file a big answer, but you have to file something.  In this case, nothing was filed in twenty days and nothing was filed in thirty days and no excusable neglect has been proven to this court by any affidavit.  This type of action is one that generally requires expedition, expeditious action.  It's a very serious matter, a very severe matter.  The court feels and finds in this case that there was ample time for an answer, a brief, small answer of any kind.  And that to come up here on the last hour and file something is not permissible.

The trial court entered an order granting default judgment against Mr. Looper on the basis that he had been properly served with process and had failed to file an answer as required by law. The court specifically found that there was no evidence in the record concerning excusable neglect. Finally, the order granted the relief sought in the petitions, entry of a judgment of ouster.

On February 4, 1999, Mr. Looper filed a motion to set aside default judgment pursuant to Tenn. R. Civ. P. 55.02 and 60.02.  He argued that the  default judgment should be set aside because he had filed an answer prior to entry of the judgment and had a meritorious defense to the actions, in that he did not willfully commit any act of misconduct or neglect of office.  He also claimed that his failure to file a timely answer was due to his former counsel's actions and his inability to obtain new counsel until shortly before the scheduled hearing.  Mr. Looper also asserted that the default judgment deprived him of his property interest in his job without due process because there had been no proof of any grounds justifying his ouster.

After a hearing on March 3, 1999, the trial court denied the motion to set aside the default judgment and stated:

---

[3]The affidavit also states that Mr. Burgess had informed Mr. Barrett that he was not representing Mr. Looper in the ouster actions. On February 16, 1999, the trial court entered a *nunc pro tunc* order granting the motion to withdraw, effective January 21, 1999. It should be noted that both Mr. Barrett and Mr. Burgess appeared on Mr. Looper's behalf at a hearing in the murder case on Mr. Looper's motion to set bond on November 23, 1998.

The situation still remains as I expressed in the earlier hearing that this is a very serious case which should be expedited. The statute provides for twenty days. No action was taken in twenty days. Sometime thereafter, Lawyer Barrett was fired. However, there was never a request for any extension of time within the twenty days or, matter of fact, forever.

The Court considered most all of these issues at the original hearing and the Court finds that there has [sic] been no new circumstances or reasons why the original ruling should not stand.

## I. Standard of Review

Mr. Looper argues that the trial court erred in entering the default judgment against him and in refusing to set aside the default judgment. The decision to enter a default judgment is reviewed for abuse of discretion. *See Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn. 1984). Similarly, motions to set aside default judgments are addressed to the trial court's discretion. *See Moore v. Palmer*, 675 S.W.2d 192, 194 (Tenn. Ct. App. 1984); *Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984). A trial court's denial of a motion to set aside a default judgment, like the decision to enter a judgment by default, will not be reversed absent an abuse of discretion. *See Nelson v. Simpson,* 826 S.W.2d 483, 485 (Tenn. Ct. App. 1991); *Patterson*, 665 S.W.2d at 100-01. Thus, our role is to determine whether the trial court abused its discretion.

A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal." *BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (no Tenn. R. App. P. 11 application filed). As a general principle, an appellate court will not reverse a decision that lies within the discretion of the trial court unless it affirmatively appears that the lower court's decision was against logic or reasoning and caused injustice to the complaining party. *See Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case. *See BIF v. Service Constr. Co.*, 1998 WL 72409, at *3.

## II. Default Judgment

A judgment by default is a final order disposing of a case on its merits, like any other judgment. A judgment by default is generally considered an admission of all the properly pleaded material allegations of fact in the complaint, except the amount of unliquidated damages. *See Patterson*, 665 S.W.2d at 101.

> The essence of a default judgment is that a nonmovant fails to take a step required by a rule of practice or of the court. A default judgment contemplates a lack of responsiveness by defendant such that plaintiff is entitled to judgment as a matter of policy; defendants are not to be allowed to prolong litigation by imposing procedural delays. The default judgment protects a diligent party from continual delay and uncertainty as to his or her rights.

49 C.J.S. *Judgments*, §196 (1997).

The Tennessee Rules of Civil Procedure authorize the entry of a judgment by default where a party "has failed to plead or otherwise defend as provided by these rules" as long as specified procedural requirements are met. *See* Tenn. R. Civ. P. 55.01. The party against whom default judgment is sought must be served with a written notice of the application for default judgment at least thirty (30) days before a hearing is held on the matter. *See id.* Mr. Looper does not dispute that he was properly served, through his counsel, with the motion for default judgment and notice that a hearing on that motion was to be held on January 26, 1999. Mr. Looper's real challenge is, in essence, an argument that he did file, or should have been allowed to file, an answer.

### A. Failure to Defend

In order to determine whether the trial court acted within the range of permissible alternatives available to it in granting the motion for default judgment, we must examine the prerequisite that the nonmovant failed to defend the lawsuit as provided by the rules. *See* Tenn. R. Civ. P. 55.01. Generally, this becomes a question of whether the defendant filed an answer or other allowable defensive pleading within the time limits established by rule, or in this case, by statute.

The ouster statutes establish some specific procedural requirements unique to ouster proceedings. Particularly relevant to the question before us are the limitation of allowable pleadings to the petition or complaint and an answer, *see* Tenn. Code Ann. § 8-47-115, and the provision shortening the normal time for answering, *see* Tenn. Code Ann. § 8-47-114. The provision establishing the time to answer states:

> Upon the filing of the complaint or petition for the writ of ouster, a summons shall issue for the defendant, and there shall accompany the summons and be served upon the defendant a copy of the complaint or petition filed against the defendant, and the defendant shall have the right to answer within twenty (20) days from such service.

Tenn. Code Ann. § 8-47-114.[4] The parties do not dispute that this provision set the applicable period in which to file a timely answer.

The parties do dispute, however, whether an enlargement of time, upon proper motion, is available in ouster proceedings. Petitioners assert that the twenty day time limit on filing an answer cannot be enlarged because the ouster statutes do not specifically allow such enlargement. According to this argument, the trial court lost authority to allow Mr. Looper to file an answer after November 25 and, therefore, could not have abused its discretion in granting a default judgment since no answer was filed within that time.

However, in *State ex rel. Leech v. Wright*, 622 S.W.2d 807 (Tenn. 1981), the Supreme Court specifically held that the Tennessee Rules of Civil Procedure apply in ouster actions. *See Wright*, 622 S.W.2d 810. While holding that any "express provision" of the ouster statutes would prevail over the Rules of Civil Procedure where they were in conflict, the Court found that where the ouster statutes did not expressly address a procedural issue, the rules would govern. *See id.* at 810-11.

As Petitioners have noted, the ouster statutes do not address the availability of extensions of time within which to file an answer.[5] The Rules of Civil Procedure, however, include such a provision which, in accordance with the holding in *Wright*, applies to this ouster proceeding. Rule 6.02, in pertinent part, states:

> When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect, but it may not extend the time for taking any action under Rules 50.02, 59.01, 59.03 or 59.04, except to the extent and under the conditions stated in those rules.

*See also Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) (the granting of a continuance lies within the trial court's discretion).

---

[4]This provision applies notwithstanding the longer period for answering set out in Tenn. R. Civ. P. 12.01. In *State ex rel. Leech v. Wright*, 622 S.W.2d 808, 810-11 (Tenn. 1981), the Supreme Court stated, "We have no hesitancy in holding that if there is any conflict between any express provision of the ouster statutes and the Tennessee Rules of Civil Procedure, the ouster statute should prevail." This point is purely academic, however, inasmuch as Mr. Looper's answer would not have been timely even if Rule 12.01's thirty day rule applied.

[5]Tenn. Code Ann. § 8-47-119(b) allows continuances of the trial for good cause shown.

The record is clear that no motion for extension of time was filed within the twenty days provided in the ouster statutes for answering.  In fact, no such motion was ever filed.  The only reason we are compelled to examine this issue is Mr. Looper's assertion that default judgment is not appropriate because he filed an answer prior to the court's actual consideration of the motion for default judgment, albeit ten minutes before the hearing on the motion. This assertion implies that his very late-filed answer included a motion for an extension of time within which to file his answer. It also directly challenges the trial court's specific finding that Mr. Looper had "failed to file an answer as required by the laws of the State of Tennessee."  We are of the opinion that the trial court's finding is consistent with applicable legal principles.

First, even if Mr. Looper's answer can be considered to have been accompanied by an implied motion for extension of time in which to answer, under Tenn. R. Civ. P. 6.02, quoted above, the trial court had the discretion to deny such a motion if it was not satisfied that the failure to file the answer was due to excusable neglect.  The trial court specifically found there was "no evidence in the record concerning excusable neglect."[6]

Second, Rule 8.02 of the applicable Local Rules of Court requires that any response to a motion, including counter-affidavits, be filed at least twenty-four (24) hours before the hearing on the motion.  Likewise, Tenn. R. Civ. P. 6.04 requires that affidavits in opposition to a motion be served not later than one (1) day before the hearing on the motion, absent permission of the court. Under both these rules, any affidavits filed by Mr. Looper on the morning of the hearing attempting to justify the failure to file a timely answer were themselves not timely.  The trial court could properly refuse to consider such affidavits or other response to the motion for default judgment.

Third, we find unpersuasive Mr. Looper's basic argument that an answer filed at any time before entry of a default judgment eliminates the trial court's discretion to grant judgment by default and eliminates the need to show excusable neglect.  We have found no authority supporting either of these conclusions.  To the contrary, this court has stated:

> The belated filing of an answer is not an adequate response to a motion for default.  There must be some application to the court for relief from the failure to timely file an answer.

*Rosche v. Von Holten*, No. 01A01-9012-CH-00466, 1991 WL 74263 at *5 (Tenn. Ct. App. May 10, 1991) (no Tenn. R. App. P. 11 application filed).

The language of Rule 55.01 makes it clear that a judge, in the exercise of sound judicial discretion, may enter a default judgment against a party who has failed to plead or otherwise defend

---

[6]*See* Section III on the motion to set aside the default judgment for a discussion of the requisites for showing excusable neglect.  We agree with the trial court that the requirements for showing excusable neglect in the context of filing a late answer are the same as for setting aside a default judgment based upon failure to file a timely answer.

in accordance with the rules, as long as proper notice of hearing on the motion is given. *See* Tenn. R. Civ. P. 55.01; *Patterson*, 665 S.W.2d at 100. Mr. Looper did not file an answer in accordance with the rules. Under the rules, an extension of time within which to file an already overdue response is available in the discretion of the trial court, for good cause shown, and upon a showing of excusable neglect. *See* Tenn. R. Civ. P. 6.02. While trial courts generally have discretion to allow late filings, they are not compelled to do so.

Mr. Looper bases his argument that even an untimely answer precludes entry of default judgment on *Tolbert v. Tolbert*, No. 03A01-9406-CV-00230, 1994 WL 705230 (Tenn. Ct. App. Dec. 15, 1994) (no Tenn. R. App. P. 11 application filed) and *BellSouth Adver. & Publ'g Corp. v. Bonilla*, No. 01A01-9505-CH-00213, 1995 WL 611283 (Tenn. Ct. App. Oct. 19, 1995) (no Tenn. R. App. P. 11 application filed). We are unpersuaded that either of these cases provides support.

In *Tolbert,* the defendant filed an answer within the time for responsive pleadings. Notwithstanding that fact, the plaintiff filed a motion for default judgment. In a footnote in our opinion on appeal, this court stated, "A default judgment is not appropriate when an answer has been filed." *Tolbert*, 1994 WL 705230 at * 1 n. 1. Mr. Looper bases his argument on this language, stating "[i]t is unclear from the *Tolbert* decision whether this proposition [the rule stated in the footnote] holds true only when a timely answer has been filed." We think a timely answer precludes default judgment under the clear language of Tenn. R. Civ. P. 55.01, but that same language clearly authorizes entry of default judgment where no answer has been filed which complies with the time limitations established by the rules.

Nor does the *Bonilla* case support Mr. Looper's argument. In *Bonilla*, the defendant did not file a responsive pleading, and the trial court entered a default judgment and denied a motion to set aside that judgment. The defendant finally filed an answer on the same day he filed his notice of appeal, on the last day for filing a notice of appeal. This court held that "[t]he long delayed tender of an answer just six minutes before the Trial Court lost jurisdiction of the controversy was an unacceptable cure for the previous delay." *Bonilla*, 1995 WL at 611283 at * 4. We find nothing in this holding to support Mr. Looper's argument that the untimely filing of an answer only minutes before the court's consideration of a motion for default judgment should be allowed and the motion denied "as a matter of course."

Mr. Looper failed to file an answer or otherwise defend the complaints in these actions in a manner or time period provided by the Rules of Civil Procedure. Thus, the trial court had discretion to grant the default judgment.

## B. Requirements of the Ouster Statutes

Mr. Looper also argues that default judgment is simply inappropriate and unavailable in ouster proceedings on the basis that the public interest demands that duly-elected officials not be

removed from office without proof of misconduct.[7]  While we agree that removal of an officeholder is a matter of serious significance to the officeholder and to the public, we are not convinced that the public interest would be served by allowing a defendant officeholder to retain his or her office, in the face of substantive claims of misconduct, by failing or refusing to respond to those claims.

In enacting the ouster statutes, Tenn. Code Ann. § 8-47-101, *et seq.*, the General Assembly has considered and balanced the various interests involved in dealing with public officials accused of misconduct in office. Both the legislature and the courts have recognized the interests of a duly-elected officeholder.  For example, an official cannot be removed or subjected to removal litigation except upon allegations of willful misconduct, willful failure to perform duties of the office, conduct involving moral turpitude, or other grounds specified in the ouster law.[8] *See In re Kelley*, 209 Tenn. 280, 285, 352 S.W.2d 709, 711 (1961).  Our courts have recognized "that ouster proceedings should not be brought unless there is a clear case of official dereliction" *See Wright*, 622 S.W.2d at 818; *see also State ex rel. Thompson v. Walker*, 845 S.W.2d 752, 759 (Tenn. Ct. App. 1992).

> The Ouster statute is a salutary one, but those administering it should guard against its over encroachment.  Shreds of human imperfections gathered together to mold charges of official dereliction should be carefully scanned before a reputable officer is removed from office.  These derelictions should amount to knowing misconduct or failure on the part of the officer if his office is to be forfeited; mere mistakes in judgment will not suffice.

---

[7]    Mr. Looper's actual statement is that "controversies respecting title to public office" should be adjudicated on the merits, and he cites *Sheridan v. McCurnin*, 124 N.J.L. 493, 495-96, 12 A.2d 255, 257 (N.J. Super. 1940) for that principle.  We would note that *Sheridan* was a *quo warranto* action which involved claims by competing parties to a position and, like *quo warranto* proceedings in Tennessee, raised issues regarding the right to hold office, as opposed to ouster for misconduct.

[8]    Tenn Code Ann. § 8-47-101 provides:
Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, who shall knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit such office and shall be ousted from such office in the manner hereinafter provided.

*State ex rel. Estep v. Peters*, 815 S.W.2d 161, 165 (Tenn. 1991) (*quoting Vandergriff v. State ex rel. Davis*, 185 Tenn. 386, 392-93, 206 S.W.2d 395, 397 (1937)).

However, the ouster statutes also reflect the General Assembly's deep concerns regarding allegations of misconduct by public officials. They establish special, expedited judicial procedures for the removal of errant officials. Recognizing the gravity of accusations of misconduct in public officials, these procedures authorize the court hearing the matter to suspend the official pending a final hearing and determination.[9] Tenn. Code Ann. § 8-47-116. A hearing on a motion to suspend can be held on as little as five (5) days' notice. Tenn. Code Ann. § 8-47-117. As discussed earlier, the statutes also limit the number of pleadings allowed and shorten the usual time permitted to answer petitions or complaints. Tenn. Code Ann. §§ 8-47-114, 8-47-115. Continuances of the trial by agreement of the parties is expressly prohibited. Tenn. Code Ann.§ 8-47-119. Both the trial court and the appellate court are directed to give ouster cases precedence. Tenn. Code Ann. §§ 8-47-119, 8-47-125. In addition, the legislature has determined that proceedings in ouster actions are to be "summary." Tenn. Code Ann. § 8-47-119.

Based on the language of the statutes, our courts have held that the legislature intended ouster actions to be conducted in speedy summary proceedings. *See Wright*, 622 S.W.2d at 810. The object of the ouster statutes has been described as "to rid the public of unworthy officials," *State ex rel. Milligan v. Jones*, 143 Tenn. 575, 577, 224 S.W. 1041, 1042 (1920), and "to improve the public service, and to free the public from an unfit officer." *State v. Howse*, 134 Tenn. 67, 78, 183 S.W. 510, 513 (1915).

Mr. Looper has presented no binding authority in support of his assertion that default judgments are inappropriate in ouster cases. Furthermore, his argument ignores the "cardinal rule" of statutory construction: to give effect to legislative intent. *Rippeth v. Connelly*, 60 Tenn. App. 430, 433, 447 S.W.2d 380, 381 (1969); *see Schering-Plough Healthcare Products, Inc. v. State Bd. of Equalization*, 999 S.W.2d 773, 775 (Tenn. 1999). The General Assembly has demonstrated its intent to expedite ouster proceedings. Without the consequence of default, an officeholder could delay trial and final determination of the charges of misconduct against him in contravention of the clear legislative intent and contrary to the public interest. As the Supreme Court held in *State ex rel. Milligan v. Jones*, the ouster statutes should be construed in a way to accomplish their purpose of freeing the public from unworthy officials, and construing the statutes to preclude judgment by default is not, in our opinion, consistent with the objectives of the statutes.

In *State ex rel. Ralston v. Showalter*, 189 Kan. 562, 370 P.2d 408 (1962), and its companion case, *State ex rel. Ralston v. Blain*, 189 Kan. 575, 370 P.2d 415 (1962), the Supreme Court of Kansas considered the propriety of a default judgment in ouster cases. Relying upon the nature of ouster

---

[9]The Petitioners moved for such suspension. The suspension hearing, required by Tenn. Code Ann. §8-47-117, was originally set for November 12, 1998. Upon recusal of the original judge, however, the hearing was continued. It was later set to be heard on January 26, 1999 along with the other /pending motions.

actions as civil proceedings, the court determined that judgment by default was available in ouster proceedings on the same basis it was available in other civil actions. *See Blain*, 189 Kan. at 578, 370 P.2d at 417. The ruling of our Supreme Court in *State ex rel. Leech v. Wright,* 622 S.W.2d at 811, that the Rules of Civil Procedure apply in ouster actions, requires a similar conclusion. In addition, the Kansas Supreme Court observed that the Kansas ouster statute was "designed to constitute a summary suit; to avoid waste of time." *Blain*, 189 Kan. at 578, 370 P.2d at 418. Observing that without a timely answer being filed, no issues were framed for trial by the court, eliminating the need for taking of or weighing of evidence, the court found that the object of ouster proceedings is to protect and preserve the office and prevent its further embarrassment by the unfaithful holder. *See Showalter*, 189 Kan. at 569, 370 P.2d at 414.

> Having had notice of the pendency of the proceeding and thereby afforded the opportunity of being heard, but having failed to answer the petition, the defendant has thus tacitly confessed the truth of the charges. In such a case, judgment may be rendered on the record without any evidence being introduced.

*Id.*

The purposes underlying judgment by default are consistent with the legislative intent that ouster actions proceed summarily and expeditiously. In examining the purpose behind the Kansas ouster statute's provision limiting pleadings to the petition and answer, as does Tennessee's statute, the Kansas Supreme Court stated, "It is clear that the legislature intended to guard against whatever real of [sic] fancied advantage an incumbent official thought would accrue to his side of the litigation by a designed course of procrastination in avoiding joining issues with the state's petition within the time required." *Id.* at 412.

We find that judgment by default, pursuant to the Rules of Civil Procedure, is available in ouster actions.

### III. Motion to Set Aside Default Judgment

Mr. Looper also appeals the decision of the trial court refusing to set aside the judgments by default. Rule 55.02 of the Tennessee Rules of Civil Procedure provides:

> For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02.

A party seeking relief under Rule 55.02 must satisfy the court that it is entitled to relief based on one of the grounds in Tenn. R. Civ. P. 60.02 and that it has a meritorious defense to the plaintiff's suit. *See* Tenn. R. Civ. P. 55.02; *Patterson*, 665 S.W.2d at 100; *Turner v. Turner*, 739 S.W.2d 779, 780 (Tenn. Ct. App. 1986). Further, the party seeking relief from a judgment has the burden of proving he or she is entitled to relief. *See Nelson*, 826 S.W.2d at 485; *Walker v. Baker*, 738 S.W.2d 194, 196 (Tenn. Ct. App. 1987). Rule 60.02 provides for relief, "on such terms as are just," from final judgments, orders, or proceedings based on the following grounds:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Mr. Looper asserts that the failure to file a timely answer was due to "excusable neglect" as that term is used in the rule. As discussed more fully earlier in this opinion, motions to set aside default judgments are addressed to the trial court's discretion, and we will not reverse absent an abuse of discretion. *See Nelson,* 826 S.W.2d at 485; *Patterson*, 665 S.W.2d at 100.

Tennessee courts generally hold that an attorney's negligence, without more, does not constitute excusable neglect. *See Terminix Int'l Co., L.P. v. Tapley,* No. 02A01-9701-CH-00028, 1997 WL 437222 at \*3 (Tenn. Ct. App. Aug. 4, 1997) (no Tenn. R. App. P. 11 filed); *see also Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986) (holding that an attorney's preoccupation with other business is not grounds for relief from a default judgment); *Munday v. Brown,* 617 S.W.2d 897, 900 (Tenn. Ct. App. 1981) (holding that a defendant is not entitled to relief from default judgment because notice to an attorney of filing of motions and orders is constructive notice to the client, even when the client did not have actual notice).

Relying upon *Terminix Int'l Co. v. Tapley*, Mr. Looper argues that an attorney's gross negligence can constitute excusable neglect justifying setting aside a default judgment. While we do not disagree with Mr. Looper's reading of *Tapley,* we find nothing in this record to show conduct by Mr. Looper's counsel which approaches the actions by the attorney involved in *Tapley.* In that case, the attorney undertook to represent parties without informing them that he was under suspension from the practice of law, a situation which made his representation legally impossible. The trial court in *Tapley* found excusable neglect justifying the setting aside of a default judgment, and this court found the trial court had not abused the discretion granted it under Tenn. R. Civ. P. 55.02. *See Tapley,* 1997 WL 437222 at \*3.

Having reviewed the affidavits and other documents filed in support of the motion to set aside the default judgment herein, as well as the material supporting Petitioners' opposition to the motion, we cannot say that the trial court in this case abused its discretion in finding that Mr. Looper had not shown excusable neglect.

It is undisputed that Mr. Looper was properly served with the petitions at issue. The Relators' petition specifically prayed that:

Service of process issue to the Defendant pursuant to law and that Defendant answer the Petition within twenty (20) days as provided by T.C.A. 8-47-114.

-12-

The record shows that Mr. Looper did not timely file an answer. Nor did he seek an enlargement of time in which to file his answer.

In early November, Mr. Burgess, while not formally entering an appearance on Mr. Looper's behalf, participated in a conference with Petitioners' counsel and the trial judge in which Mr. Burgess asked for a continuance of the hearing on petitioners' motions to suspend Mr. Looper from office pending a final determination, which hearing had been set for November 12.[10] Mr. Barrett, who had been representing Mr. Looper in several matters including the criminal case involving charges of misconduct, filed a notice of appearance in these cases on behalf of Mr. Looper on November 10, 1998. Mr. Barrett and Mr. Burgess appeared on Mr. Looper's behalf in the murder case on November 23. Mr. Barrett's office participated in a telephone conference with the new trial judge and Petitioners' counsel on December 17 to set a date for the suspension hearing. The motions for default judgment were filed December 17 and duly served on Mr. Barrett.

Mr. Looper stated he learned of the motions for default judgment from the newspaper. He dismissed Mr. Barrett sometime around Christmas and directed Mr. Barrett to forward the files in these cases to Mr. Burgess. Mr. Barrett filed a motion to withdraw as counsel on January 20 and participated in a telephone conference with the trial court on January 22 regarding that motion. Mr. Barrett indicated he would contact Mr. Looper and offer to represent him at the hearing.

Mr. Looper hired his new counsel two days before the hearing, and she prepared and filed numerous documents immediately before the hearing and represented Mr. Looper vigorously at the hearing.

The record contains documents which mention other attorneys representing Mr. Looper in various other matters during the pendency of this litigation and also contains Mr. Looper's written communication to courts and attorneys regarding those matters. He also communicated with State officials and with his office staff in his role as Assessor.

We find nothing in this record to convince us that the trial court did not properly apply the appropriate legal principles. On the contrary, the conduct attributed to Mr. Looper's counsel does not appear significantly different from attorney conduct in those cases holding that an attorney's neglect does not constitute excusable neglect. *See, e.g.*, *Barber & McMurry*, 720 S.W.2d at 477; *Munday*, 617 S.W.2d at 900; *International Corporate Enter., Inc. v. Toshoku, Ltd.*, 71 F.R.D. 215 (N.D.Tex.1976).

Mr. Looper also claims that he acted expeditiously in view of his incarceration and that any neglect on his part in hiring counsel or responding to the complaints was excusable. Considering these claims, we still find no basis in the record for reversing the trial court's finding that Mr. Looper failed to demonstrate excusable neglect. This court has observed:

---

[10]Since the trial judge subsequently recused himself, the suspension hearing was not held on November 12 and was later reset for January 26.

It has been declared that the mere negligence or inattention of a party is no ground for vacating a judgment against him. Carelessness is not synonymous with excusable neglect. Mere forgetfulness of a party to an action is not a sufficient ground for vacating or setting aside a judgment by default. Parties are not justified in neglecting their cases merely because of the stress or importance of their own private business and such neglect is ordinarily not excusable. 46 Am.Jur.2d 874-75 *Judgments* § 718 (1969); *Dudley v. Stiles,* 142 Mont. 566, 386 P.2d 342 (1963).

*Jimmy Whittington Lumber Co. v. Johnson Dev. Co.*, No. 01A01-9404-CH-00080, 1994 WL 499049 at *2 (Tenn. Ct. App. Sept. 13, 1994) (no Tenn. R. App. P. 11 application filed) (quoting *Food Lion, Inc. v. Washington Co. Beer Bd.*, 700 S.W.2d 893, 896 (Tenn.1985)).

The record shows that after learning the case was in default, Mr. Looper chose to discharge his counsel, rather than to allow counsel the opportunity to protect his rights by filing a motion for permission to file an untimely answer. Instead, Mr. Looper demanded that his counsel turn the file over to another attorney who had not, in fact, been retained. During most of the month of January, Mr. Looper failed to file an answer or other appropriate response and failed to retain counsel to act for him.[11] Mr. Looper was, during this time, communicating with various people about other litigation. Mr. Looper's affidavit fails to show that his incarceration prevented him from taking action to protect his interests in this litigation. The record shows that Mr. Looper's own choices, not his incarceration, prevented him from participating in this action.

## IV. Exclusion of the Offer of Proof

Mr. Looper maintains that the trial court committed reversible error by refusing to allow him to make an offer of proof on the excusable neglect issue at the default judgment hearing. This issue was waived by counsel's failure to elicit a ruling on her request to admit the testimony of Mr. Looper's criminal counsel. *See Nashville, Chattanooga & St. Louis Ry. v. Hayes*, 117 Tenn. 680, 696, 99 S.W. 362, 366 (1907) (it is the movant's duty to ensure a ruling). Moreover, the error, if any, was rendered harmless when the affidavit of Mr. Looper's criminal counsel was admitted as an exhibit to the motion to set aside default judgment. *See Southern Bell Tel. & Tel. Co. v. Skaggs*, 34 Tenn. Ct. App. 549, 241 S.W.2d 126, 134 (1951) (a showing of both harm and error is required for reversal). Nothing in this affidavit establishes that the trial court abused its discretion when ruling on the issue of excusable neglect.

## V. Conclusion

Accordingly, the judgment of the trial court is affirmed. This case is remanded for proceedings consistent with this opinion. Costs of this appeal are to be taxed to Mr. Looper, for which execution may issue if necessary.

---

[11]The fact that Mr. Looper attended law school for a number of years makes his failure to file some kind of answer even less comprehensible.