IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2019 Session

**STATE OF TENNESSEE, EX REL. ROBBIE B. V. SIVA M.**

**Appeal from the Juvenile Court for Davidson County**
**No. PT232436, 2017-3686          Sheila D. J. Calloway, Judge**

_____

**No. M2019-00115-COA-R3-JV**

_____

The Father appeals the imposition of a retroactive child support obligation for more than five years, contending that the Mother did not show good cause for imposing the obligation, as required by Tennessee Code Annotated section 36-2-311(a)(11)(G)(i); he also contends that the calculation of his income was erroneous. Upon our review, we affirm the imposition of the retroactive child support obligation in excess of five years; we vacate that portion of the order establishing the amount of Father's obligation and remand for the trial court to recalculate the same.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Thomas H. Miller, Franklin, Tennessee, for the appellant, Siva K. M.

Herbert H. Slatery, III, Attorney General and Reporter; Matt D. Cloutier, Assistant Attorney General, for the Tennessee Department of Human Services and Robbie B.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**[1]

Robbie B. and Siva M. dated during the summer of 2003; Robbie ("Mother") became pregnant and gave birth to a daughter, Sophia B. in March 2004.[2]  Siva M.

_____

[1] The facts set forth in this opinion are taken from the pleadings and the parties' testimony at the September 27, 2018 hearing before the juvenile court judge.

[2] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

("Father") met the child shortly after she was born, visiting her and Mother at Mother's apartment. A few months later, in May, Father returned to Hyderabad, India to care for his terminally ill father. Prior to leaving, Father gave Mother $1,000. While Father was in India, Father and Mother communicated a few times; communication ceased around August 2004, at which time Father had married. Father returned to the United States in October 2004, but no further contact was had between the parties. He began working as a software consultant in November 2004. He lived briefly in Nashville, Virginia, New York, and Pennsylvania before ultimately settling in New Jersey in May 2007.

In December 2009, Mother contacted Child Support Services of the Tennessee Department of Human Services; her case was assigned a TCSES (Tennessee Child Support Enforcement System) case number, but the agency was unable to locate Father. In 2014, Sophia searched online and located her Father; however, he did not respond to her attempts to contact him by letter. Mother testified that she also left a message on his answering machine but never received a response. She testified that she was "under the impression that [the address Sophia had found for Father was wrong] since he never wrote her back."

Mother contacted Child Support Services again in 2017, after a friend of hers located Father at the same address Sophia had previously found online. Child Support Services resumed work on her case, utilizing the same TCSES case number Mother had been assigned in 2009, and in August filed a petition on behalf of Mother to establish Father's parentage and set child support. Father and Mother began to communicate, and Father sent Mother approximately $5,000.[3] After DNA testing was ordered and performed, a magistrate entered an order on December 14, 2017, establishing that Siva M. was the father of Sophia, setting support at $1,398.00 per month, and reserving the issue of retroactive support. A hearing was held in May 2018 before the magistrate, who entered an order on May 17, recalculating Father's support obligation, stating that "upon further review of the Father's Social Security earnings statement, it appears the Father's income has been substantially higher tha[n] the amount used initially to calculate support." The magistrate set support obligation at $1,918.00 per month and also awarded a judgment for retroactive child support for a period of five years, in the amount of $93,360, to be paid at a rate of $582.00 per month.

Both Mother and Father appealed the magistrate's decision to the juvenile court. In her "Motion and Request for Rehearing," Mother stated, "I am appealing retro[active] support being set for 5 years due to change of law. I began this process in 2009 & [am] being penalized because he wasn't located at that time. I found him and refiled in March '17 (also prior to law change)." Father also appealed, seeking to have the court

---

[3] Father testified that he sent her "$1,000 or $1,500 every month from August, September, October and November" of 2017.

reexamine his earnings to assess the accuracy of the support obligation. A hearing was held on September 27, 2018, at which Mother, Father, and Mother's sister testified.

The juvenile court entered an order on November 15, 2018, in which it awarded retroactive support to December 2009. Following an additional hearing, the court entered an order setting Father's support obligation at $1,662.00 per month and reducing the retroactive support total by $6,000 for monies paid directly to Mother and $21,291 that Father had paid pursuant to orders entered by the magistrate and juvenile court through November 30, 2018. Father was ordered to pay $154,463.00 in retroactive child support, at a rate of $588.00 per month, for a total monthly support obligation of $2,250.00.

Father appeals, stating the following issues for our review:

1. Whether the trial court erred in awarding retroactive support for more than five (5) years.
2. Whether the trial court erred in its calculation of current child support.

## II. STANDARD OF REVIEW

This court explained our standard of review specific to child support determinations in *Richardson v. Spanos*:

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 222–23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins,* 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan,* 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003);

*Clinard v. Blackwood,* 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). We review the court's factual determinations in accordance with Tennessee Rule of Appellate Procedure 13(d).

### III. ANALYSIS

### A. Retroactive Award of Child Support

The Petition to Establish Parentage and Set Child Support was filed on August 21 2017, thus Tennessee Code Annotated section 36-2-311(a)(11)(G), governing the retroactivity of child support awards applies:

> (i) In any action for retroactive child support filed on or after July 1, 2017, retroactive child support shall not be awarded for a period of more than five (5) years from the date the action for support is filed unless the court determines, for good cause shown, that a different award of retroactive child support is in the interest of justice. The burden to show that a longer time period of retroactive support is in the interest of justice is on the custodial parent. Good cause includes, but is not limited to, the following:
>
> > (a) The noncustodial parent deliberately avoided service or knowingly impeded or delayed the imposition of a support obligation;
> > (b) The noncustodial parent used threats, intimidation, or force to prevent or delay the imposition of a support obligation; or
> > (c) The custodial parent reasonably feared that the establishment of parentage would result in domestic abuse, as defined in § 36-3-601;
>
> (ii) The court may award retroactive child support for less than the five-year-period required by subdivision (a)(11)(i) if the court determines, for good cause shown, that a different award of retroactive child support is in the interest of justice. The burden to show that a shorter time period of retroactive support is in the interest of justice is on the noncustodial parent;
>
> (iii) Upon a finding of good cause in accordance with this subdivision (a)(11)(G), the court may order retroactive support from the date the court determines to be equitable and just;
>
> (iv) The presumption that child support for the benefit of the child be awarded retroactively to the date of the child's birth contained in the child support guidelines shall not apply to any action in which this subdivision (a)(11)(G) is applicable;

- 4 -

(v) Nothing in this subdivision (a)(11)(G) limits any claim for retroactive child support owed to the department of human services[.]

The juvenile court awarded child support retroactive to December 2009, stating the following factual findings and conclusions of law:

1) The parties have one child together, Sophia R[.] B[.], born [i]n March . . . 2004. Sophia has lived with Mother since birth. Mother and Father broke up right after Mother discovered that she was pregnant. Mother did inform Father of the pregnancy.
2) Although they were not a couple, Father visited with Sophia in Mother's apartment shortly after she was born. According to the testimony, Father acted as her father for about two months. Father knew where the mother lived during that time period.
3) Father moved to India some time in 2004 after Sophia was born due to a job transfer allowing him to care for his ill father. Although Father informed Mother of the city he was moving to in India, he never gave her any more information about how to locate him. During this time in India, Father entered into an arranged marriage.
4) During and after the time Father was in India, Mother attempted to locate Father and communicate with him. Unfortunately, Mother was unable to locate Father. Mother was told by Father that he was unsure of how long he would be in India. He admitted to telling Mother that he may or may not move back to the states.
5) Father moved back to the states in October of 2004. However, he never informed Mother that he was back. Even though he knew where Mother and his child lived, he never tried to reconnect with them. Mother and their child lived at the same location at least until 2007.

***

This Court will first determine the period of time to be awarded in retroactive support to Mother. Mother first filed for child support in 2009 when the statute presumed retroactive support would be extended back to the child's birth. Father could not be located until March 2017, which led Mother to file again for child support. The statute addressing retroactive support was amended effective July 1, 2017, before child support in this case was set. The amended statute regarding retroactive support limits retroactive support to a period of five (5) years unless good cause can be shown to either shorten or lengthen the period of time. According to T.C.A. § 36-2-311(2017)(a)(11)(G)(i)

... In any action for retroactive child support filed on or after July 1, 2017, retroactive child support shall not be awarded for a period of more than five (5) years from the date the action for support is filed unless the court determines, for good cause shown, that a different award of retroactive support is in the interest of justice. The burden to show that a longer time period for retroactive support is in the interest of justice is on the custodial parent.

The Court heard testimony from both parties regarding the extent to which Father knew Sophia existed, where she was located, and how to contact Mother. Testimony of the Father revealed that he had visited with Sophia and was made aware by Mother that she needed money before he left for India. Father paid Mother $1,000 before he left for India and $5,000 after. Because of Father's move to India and his moving back to Nashville, TN without giving notice to Mother of his whereabouts, Mother had no way of attempting to receive child support. The testimony established that Father visited Sophia in Mother's apartment where she lived until at least 2007, which is well after Father returned to Nashville. Father could have returned to the same apartment upon his return to Nashville to provide notice of his whereabouts, but he did not. Father gave no real explanation as to why he did not attempt to contact Mother or their child other than the fact that he was now married. Mother provided good cause to show that a different award of retroactive child support is in the interest of justice. According to T.C.A. §36-2-311(2017)(a)(11)(G)(iii)

...Upon a finding of good cause in accordance with this subdivision (a)(11)(G), the court may order retroactive support from the date the court determines to be equitable and just...

Accordingly this Court finds that Mother should be awarded retroactive support back further than the five (5) year period. Because Mother filed for child support in December 2009, she should be rewarded retroactive support back to this date. Father should not be freed from his obligation to pay child support for the time he made himself unavailable to Mother and Sophia.

Father does not appeal the award of retroactive support for the five-year period immediately preceding the filing of the petition; he challenges only the holding that he should be required to pay child support for the additional period of December 2009 through July 2012. He contends on appeal that the decision "is not supported by even a preponderance of the evidence," and is an abuse of discretion. He also argues that the

statute's list of circumstances of what constitutes good cause for the purpose imposing child support for a period of more than five (5) years "indicate[s] the egregious nature of what would suffice." Father argues that Mother only showed "intermittent interest in pursuing child support" and that his actions since Sophia's birth do not constitute good cause for imposing a retroactive child support obligation on him beyond the five years contemplated in the statute.[4]

Upon our review of the record, the evidence does not preponderate against the trial court's factual findings. Both Father's and Mother's testimony supports a conclusion that Father knew of Sophia's existence; that he visited her and gave Mother money before he left for India; that he failed to communicate with or visit Mother and Sophia after August 2004, despite the fact that he returned to the Nashville area only a few months later; and that Mother and Sophia's address did not change until 2007. Viewing the record as a whole, it is clear that the court considered all the testimony and took the applicable law and the relevant facts into account in rendering the decision; the testimony supports the finding that Father consciously made himself unavailable, thereby providing the factual basis to hold that Mother demonstrated good cause, within the meaning of the statute, to impose Father's retroactive obligation beyond the initial five-year period. Extending the award retroactively was in the interest of justice and did not cause an injustice to Father. Accordingly, we discern no abuse of discretion and affirm the trial court's award of child support for the period of December 2009 through July 2012.

### B. Amount of the Award

"Support for the child of unmarried parents is established using the same standards applicable to divorce cases." *In re Britton H-S.,* No. M2016-01576-COA-R3-JV, 2018 WL 1040945, at *7 n.5 (Tenn. Ct. App. Feb. 23, 2018) (citing Tenn. Code Ann. § 36-2-311(a)(11)). Child support decisions are discretionary and "must be made within the strictures of the Child Support Guidelines." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

The first step in setting child support is accurately determining the parties' gross incomes. Tenn. Comp. R. & Regs. 1240-2-4-.04(3); *see also Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009) ("The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support.").

---

[4] Section 36-2-311(a)(11)(G)(i) does not specify whether the custodial parent's burden is determined by a preponderance of the evidence or by heightened clear and convincing evidence standard; Father contends that the clear and convincing standard should apply. We disagree. In section 36-2-311(a)(11)(B) and (C), the Legislature has specifically provided that the presumptions that the child support guidelines apply to retroactive awards (subsection (B)) and that deviations from the guidelines will not be granted (subsection (C)) should be proven or rebutted by clear and convincing evidence; inasmuch as the Legislature has not expressly stated that the standard should apply in subsection (G), we will apply the preponderance of the evidence standard in our analysis.

With respect to the amount of Father's support obligation, the November 15 order states in pertinent part:

9) Father was ordered to pay child support in December 2017.
10) The support was amended by Magistrate Ottman's order based on an assessment of Father's Social Security earnings statement. The new support order included an additional $250,000 for bonus payments.

***

The Court now reassesses the accuracy of the Father's earnings to set current and retroactive support. Both child support services and Father agree that the bonus amount of $250,000 is probably not determinative of Father's actual salary. The bonus amount is determined by the company's performance. One great year is not indicative of Father's true salary. Therefore, the Court will base the salary on the average of the last three years of Father's commission.

The court then ordered that the amount of child support would be set after an additional hearing. A "Family Service Decree Note Form" was entered by the court on December 7, wherein the court wrote, "Case set for completion of trial as to amt. of child support. Support set @ $1,662.00 for [indecipherable] support and $588.00 for arrears. Total support is $2,250 per month." The Final Order, entered December 19, reiterates the amounts set forth in the December 7 "Family Service Decree Note Form" and references an attached Child Support Worksheet.

Father contends on appeal that the order should be reversed and the case remanded because the court failed to account for the fact that $38,411.67 of his 2017 income was non-recurring; because the order evinces a "lack of clarity"; and because the court did not make specific findings regarding mother's ability to earn income. The State does not contest Father's position and states in its brief that it "does not object to a remand" and that the case "should be remanded for the juvenile court to properly calculate Father's child support obligations and enter detailed findings on that issue."

The "Service Decree Note Form" and the December 19 order do not contain findings as to the amount of either Father's or Mother's income, such that we can accurately review the calculation of the amount of support.[5] While the court indicated

---

[5] The order entered December 19 referenced an attached Child Support Worksheet that indicated Father and Mother's respective monthly gross incomes. It is unclear where the amount of Mother's monthly income came from, as Mother testified at the September 27 hearing that she was about to start a new job and that while she knew the hourly rate she would be paid was $23.50, she did not yet know how much she would be allowed to work, though she hoped it would be "at least 36" hours per week. She also

that Father's commissions should be taken into account, i.e., that it would "base the salary on the average of the last three years of Father's commission," in accordance with Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b),[6] the figures included on the worksheet do not appear to do so, and the parties agree that the amount attributed to Father as his gross income is incorrect.

Accordingly, we vacate the portion of the judgment regarding the calculation of the award and remand for the court to recalculate the award and to make specific findings in that regard. Our holding does not preclude the trial court from considering additional proof of the parties' income on remand. Pending the entry of the trial court's order on remand, the obligation set in the order entered December 19, 2018, will remain in effect.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment extending retroactively Father's obligation to December 2009; we vacate the amount of Father's monthly support obligation and remand the case for recalculation of that amount, as well as the amount of the retroactive award, in accordance with this opinion.

_____

RICHARD H. DINKINS, JUDGE

---

testified that she did not know what other benefits she might receive, such as medical insurance for her children. "The goals of the Guidelines are best met when current and accurate information of a parent's income is used." *Radebaugh v. Radebaugh*, No. M2005-02727-COA-R3-CV, 2006 WL 3044155, at *10 (Tenn. Ct. App. Oct. 26, 2006).

[6] That regulation provides: "Variable income such as commissions, bonuses, overtime pay, dividends, etc. shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b).