IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2025 Session

## STATE EX REL. ADOLPHUS PELLEY v. BO PERKINSON

**Appeal from the Circuit Court for McMinn County**
**No. 2022-CV-298          J. Michael Sharp, Judge**

_____

**No. E2024-00644-COA-R3-CV**

_____

The trial court awarded attorney's fees as sanctions against a petitioner and his attorney in this ouster proceeding, pursuant to Tennessee Code Annotated § 8-47-122(b), following a voluntary nonsuit of the petition. The trial court based its award of sanctions upon, *inter alia*, its determination that the petition's allegations were unsupported and that the petitioner's attorney had acted recklessly when filing the petition by purporting to represent individuals with whom he had neither met nor spoken. The petitioner and his counsel have appealed. Upon review, we affirm the trial court's award of sanctions against counsel, but we vacate the court's award of sanctions against the individual petitioner. We decline to award additional attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Van R. Irion and Russ Egli, Knoxville, Tennessee, for the appellants, Adolphus Pelley and Van R. Irion.

Daniel H. Rader, IV, and Lane Moore, Cookeville, Tennessee, for the appellee, Bo Perkinson.

## OPINION

### I. Factual and Procedural Background

On August 18, 2022, Dr. Adolphus "Dick" Pelley, a member of the Athens City Council, and other petitioners, all of whom were voters in the City of Athens, Tennessee, filed a writ of ouster against then-Mayor of Athens, Bo Perkinson. Relying on Tennessee

Code Annotated § 8-47-101, *et seq*., the petitioners alleged that Mr. Perkinson had violated the duties of his office by failing to follow proper parliamentary procedure during an August 2022 council meeting and by refusing "to hear Pelley's motions or allow Pelley to present them to the Council." According to the petitioners, "Perkinson also instructed Pelley to sit down and stop talking, while Pelley properly had the floor under [Robert's Rules of Order]." The petitioners further alleged that Mr. Perkinson had effectively nullified Dr. Pelley's elected position for two years by refusing to place Dr. Pelley's proposed items on the meeting agenda and by refusing to allow him to make motions. The petitioners thus sought Mr. Perkinson's immediate removal from office. The petition was sworn to and signed by Dr. Pelley as well as counsel, Van Irion, who was listed as "Attorney for Petitioners." Along with the petition, Dr. Pelley filed numerous signed declarations from voters in Athens, stating that they wished to be "included as one of the ten or more individual 'freeholders' required to file the above-entitled petition."

Mr. Perkinson filed an answer on September 8, 2022, denying the material allegations of the petition. He also filed a motion to dismiss, asserting that the petition failed to state any valid basis for his ouster in that the petition did not demonstrate any actual dereliction of duties. He further argued that the attached declarations of the petitioners did not properly verify the contents of the petition as required by Tennessee Code Annotated § 8-47-110.

Mr. Perkinson concomitantly noticed the petitioners for depositions. Following the depositions, Mr. Perkinson filed a motion, pursuant to Tennessee Code Annotated § 8-47-122(b), seeking an award of attorney's fees and sanctions against any petitioners who had not yet dismissed their claims. Mr. Perkinson asserted that the petitioners' depositions had revealed that the petition should be dismissed because the petitioners had executed declarations without knowledge of the facts in the petition and without knowledge that Mr. Irion purported to represent them. Mr. Perkinson thus argued that the petition violated Tennessee Rule of Civil Procedure 11. The petitioners opposed this motion, arguing that no specific conduct violating Rule 11 had been alleged and that the safe harbor provision contained in Rule 11 had not been followed.

On September 30, 2022, the petitioners filed a notice of nonsuit pursuant to Tennessee Rule of Civil Procedure 41. Meanwhile, on September 29, 2022, Mr. Perkinson filed a motion seeking an award of discretionary costs pursuant to Tennessee Rule of Civil Procedure 54. Mr. Perkinson asserted that he was the "prevailing party" and sought to recover court reporting costs in the amount of $6,993.35.

On October 20, 2022, Mr. Perkinson filed a memorandum in support of his motion for attorney's fees and sanctions, relying on Rule 11, Tennessee Code Annotated § 8-47-122(b), and the court's inherent powers. In this memorandum, Mr. Perkinson detailed certain conduct by Mr. Irion that purportedly violated Rule 11, including that some of the petitioners had never met Mr. Irion, did not realize that they were joining an ouster suit,

and did not realize that Mr. Irion claimed to represent them. Mr. Perkinson asserted that the declaration forms were handed out "in blank" and that many were signed prior to the City Council meeting that allegedly prompted the filing of the petition. Mr. Perkinson further pointed out that § 8-47-122(b) allowed for an award of fees and sanctions even when the petition had been nonsuited. Mr. Perkinson then filed numerous excerpts from the petitioners' depositions. Mr. Perkinson's attorney subsequently filed an itemized invoice detailing fees of more than $48,000.00 associated with taking the petitioners' depositions and other litigation tasks.

On June 16, 2023, the trial court entered an order from an evidentiary hearing the court had conducted on September 16, 2022, regarding the petitioners' application seeking Mr. Perkinson's temporary suspension. In its order, the court denied the application upon finding that the evidence before the court was insufficient to warrant a temporary suspension inasmuch as Dr. Pelley had admitted that he had not taken the appropriate steps to place his proposed items on the agenda for the August 2022 council meeting at issue. The court noted that "Dr. Pelley did visit the lectern during the meeting at issue, stood at the lectern, and addressed the Council members." Upon denying the application for temporary suspension, the court had set the ouster matter for final hearing. However, the petitioners had nonsuited the ouster petition before the final hearing could be conducted.

Subsequently, on August 18, 2023, the trial court entered an order regarding Mr. Perkinson's motions for sanctions and discretionary costs, which resulted from a hearing that had been conducted by the court on May 19, 2023. In its order, the court found that Mr. Irion had filed a notice of nonsuit "claiming to represent the 'petitioners'" and that "at all times during this action, Attorney Irion [had] claimed to represent all of the petitioners." The court also noted that the petitioners' nonsuit was filed following the court's September 2022 bench ruling concerning the insufficiency of the evidence regarding suspension of Mr. Perkinson.

The trial court indicated that the deposition testimony of various petitioners had revealed that they (1) did not realize that Mr. Irion was purporting to represent them, (2) had never seen the ouster petition, and (3) did not understand the relief sought by the petition. The court noted that the petition had specifically stated that Mr. Irion was representing all the petitioners. The court also noted that Mr. Irion had prepared the declarations signed by the petitioners and that many of the declarations had been signed in blank form before the City Council meeting at issue had taken place.

The trial court articulated that it had "great concerns that this entire lawsuit was represented to the court to have been filed by people that did not even know a lawsuit was being filed, much less what the subject matter or issue of the lawsuit was." Following lengthy factual findings concerning the testimony of the petitioners and the court's review of the filed declarations, the court concluded that Mr. Irion had filed a petition that was "not only legally wrong, it was a willful misrepresentation to the court." The court

determined that Mr. Irion, acting in concert with Dr. Pelley, had violated Tennessee law by filing the petition, that the petition had not been filed in good faith, and that sanctions were warranted because "T.C.A. § 8-47-122(b) is intended to prevent this exact type of wrong." The court therefore imposed sanctions in the form of an award of attorney's fees to Mr. Perkinson in the amount of $48,682.92. The court also awarded discretionary costs of $6,993.35 and directed that the sanctions and costs were to be paid by Mr. Irion and Dr. Pelley. The court further ordered Mr. Irion to self-report his conduct to the Board of Professional Responsibility.

On September 14, 2023, Dr. Pelley filed a motion to amend the trial court's August 2023 order awarding sanctions. Dr. Pelley argued that the declarations signed by the petitioners did not include assertions concerning the facts contained in the petition; rather, they "simply assert[ed] that the signer lives in Athens and wants to participate as a petitioner." In addition, Dr. Pelley urged that it was undisputed that he had been denied "his lawful rights as an elected official to bring motions to the Council under 'New Business' as is set out in the Council's legally adopted procedural Rules." Dr. Pelley claimed that the petitioners had signed their declarations under penalty of perjury and that Mr. Irion had not acted in bad faith when relying on those declarations. Dr. Pelley thus asked the court to amend its order by eliminating the sanctions imposed and to "apologize to attorney Irion and Council Member Dr. Pelley for failing to enforce Tennessee law."

On January 11, 2024, Mr. Perkinson filed a motion seeking additional findings in support of the judgment concerning the amount of attorney's fees awarded as sanctions, including an analysis of the factors enumerated in Tennessee Supreme Court Rule 8, Rule of Professional Conduct ("RPC") 1.5, in accordance with a recent Opinion from this Court. On January 29, 2024, the trial court conducted a hearing regarding the pending motions. In an order dated April 4, 2024, the court determined that its previous findings and conclusions were sound, and the court denied Dr. Pelley's motion to amend its prior order. The court granted Mr. Perkinson's motion to add additional findings regarding the amount of attorney's fees awarded and specifically considered and made findings regarding RPC 1.5 in support of the amount of such award. Dr. Pelley timely appealed.

II. Issues Presented

Dr. Pelley and Mr. Irion present the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by finding that the signed declarations asserted facts that they did not assert.

2.      Whether the trial court erred in finding bad faith based solely upon its alleged misreading of the declarations.

- 4 -

3. Whether an attorney can reasonably rely upon sworn statements of clients.

4. Whether the reference to Rule 11 in Tennessee Code Annotated § 8-47-122(b) limits the trial court to the authority established in Rule 11.

5. Whether the trial court abused its authority by purportedly nullifying Tennessee Code Annotated § 8-47-110, *et. seq.*

Mr. Perkinson has restated the petitioners' issues and raised additional issues, which we have likewise restated slightly:

6. Whether the trial court properly determined that Dr. Pelley and Mr. Irion engaged in bad faith and reckless conduct sufficient to warrant sanctions pursuant to Tennessee Code Annotated § 8-47-122(b) and the inherent power of the court.

7. Whether the trial court's rejection of the petitioners' position after an evidentiary hearing constituted "nullifying" Tennessee Code Annotated § 8-47-110, *et. seq.*

8. Whether an attorney who had prepared declarations in blank, permitted them to be disseminated to unknown persons, and then subsequently filed such declarations with the trial court, could "reasonably rely" on the signed declarations.

9. Whether Dr. Pelley and Mr. Irion have waived other arguments in their brief on appeal by failing to refer to or raise them in their Statement of the Issues.

10. Whether Mr. Perkinson is entitled to attorney's fees incurred on appeal based on Tennessee Code Annotated § 8-47-122(b), the inherent power of the Court, or in accordance with Tennessee Code Annotated § 27-1-122 for a frivolous appeal.

III. Standard of Review

When imposing sanctions, the trial court relied on Tennessee Code Annotated § 8-47-122(b), which provides that "the complainant <u>may</u> be taxed for costs and attorney fees pursuant to Rule 11 of the Tennessee Rules of Civil Procedure, if the complaint or petition is withdrawn or if the court finds the charges alleged to be without merit" (emphasis added). As our Supreme Court has previously explained, "[t]he word 'may' used in a statute

ordinarily connotes discretion or permission and will not be treated as a word of command." *Williams v. McMinn Cnty.*, 352 S.W.2d 430, 433 (Tenn. 1961).

Ergo, the trial court's imposition of sanctions is a discretionary decision that we review to determine whether the lower court abused its discretion. In doing so, we must determine: "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We review the underlying factual findings "using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and . . . review the lower court's legal determinations de novo without any presumption of correctness." *See id.* Proper interpretation of a statute is a question of law that is reviewed *de novo*. *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013).

## IV. Ouster Statutes

Before reaching the merits of this appeal, we find it helpful to review the applicable provisions of Tennessee's ouster statutes, beginning with Tennessee Code Annotated § 8-47-101 (West May 10, 2004, to current), which provides:

> Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, who shall knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of illegal gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit such office and shall be ousted from such office in the manner hereinafter provided.

The petition that initiated this action was filed pursuant to Tennessee Code Annotated § 8-47-110 (West 1915 to current), which states:

> The petition or complaint shall be in the name of the state and may be filed upon the relation of the attorney general and reporter, or the district attorney general for the state, or the county attorney in the case of county officers, and of the city attorney, or the district attorney general, in the case of municipal officers; <u>and in all cases it may be filed, without the concurrence of any of such officers, upon the relation of ten (10) or more citizens and freeholders</u>

- 6 -

of the state, county, or city, as the case may be, upon their giving the usual security for costs.

(Emphasis added.) Pursuant to Tennessee Code Annotated § 8-47-113 (West 1915 to current), the petition "shall be verified by oath or affidavit" and "shall state the charges against defendant, with reasonable certainty." The statutory scheme also allows for the defendant officer to be suspended, upon application, pending a final hearing on the ouster petition, provided that the trial court finds "good cause therefor." *See* Tenn. Code Ann. §§ 8-47-116, -117 (West 1915 to current).

Regarding liability for costs, Tennessee Code Annotated § 8-47-122 (West July 10, 2016, to current) provides:

(a) Such proceedings against state officers, when brought by or upon relation of the attorney general and reporter, shall be at the expense of the state; when brought against county officers by or upon the relation of any of the officers above named, they shall be at the expense of the county; when brought against municipal officers by or upon the relation of the city attorney, or the district attorney general, they shall be at the expense of the municipality; and when brought by or upon the relation of citizens and freeholders, they shall be at the expense of relators; provided, that in all cases, where such proceedings are successful, full costs shall be adjudged against the defendant.

(b) Notwithstanding subsection (a) or any other law to the contrary, the complainant may be taxed for costs and attorney fees pursuant to Rule 11 of the Tennessee Rules of Civil Procedure, if the complaint or petition is withdrawn or if the court finds the charges alleged to be without merit.

V. Interpretation of Tennessee Code Annotated § 8-47-122(b)

To determine whether the trial court properly awarded attorney's fees to Mr. Perkinson in this case, we must first analyze the meaning of Tennessee Code Annotated § 8-47-122(b). The petitioners argue that a proper interpretation of this statute's language regarding an award of costs and attorney's fees as allowable "pursuant to Rule 11 of the Tennessee Rules of Civil Procedure" requires that all the procedural aspects of Rule 11 must be followed, including the safe harbor prerequisite contained in Rule 11.03. The petitioners therefore contend that because Mr. Perkinson failed to serve a motion for sanctions upon them and wait twenty-one days before filing the motion in court, he cannot

- 7 -

be awarded sanctions "pursuant to Rule 11." Mr. Perkinson counters that § 8-47-122(b) offers a remedy that is in addition to and independent of Rule 11's provisions.[1]

We reiterate that the proper interpretation of a statute is a question of law, which we review *de novo* with no presumption of correctness. *See Pickard*, 424 S.W.3d at 518. As our Supreme Court has further explained:

> A court's overarching purpose in construing statutes is to ascertain and effectuate legislative intent without expanding a statute beyond its intended scope. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). Words used in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). We endeavor to construe statutes in a reasonable manner that "avoids statutory conflict and provides for harmonious operation of the laws." *Baker*, 417 S.W.3d at 433 (internal quotations omitted). Where statutory language is ambiguous or a statutory conflict exists, we may consider and discern legislative intent from matters other than the statutory language, "such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013)). We presume that the General Assembly has knowledge of its prior enactments and knows the state of the law and the existence of other statutes relating to the same subject at the time it enacts new statutes. *Shorts* [*v. Bartholomew*], 278 S.W.3d [268,] 277 [(Tenn. 2009)] (citing *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 810 (Tenn. 1994)).

*Brown v. Jordan*, 563 S.W.3d 196, 198-99 (Tenn. 2018). In addition, "we must interpret the statute 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Culbreath v. First State Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)).

In this case, the trial court imposed sanctions against Dr. Pelley and his counsel, pursuant to Tennessee Code Annotated § 8-47-122(b), despite their postulate that the court

---

[1] Although we acknowledge that Mr. Perkinson has raised a valid point regarding the conflict between strict adherence to Rule 11's provisions and § 8-47-122(b)'s language allowing for sanctions when the petition has been withdrawn, as discussed below, we find Mr. Perkinson's argument based on grammar and punctuation, advanced pursuant to *White v. State Farm Mut. Auto. Ins. Co.*, No. W2019-00918-COA-R3-CV, 2020 WL 886139, at *5 (Tenn. Ct. App. Feb. 24, 2020), to be unavailing and inapposite here.

could not do so without Mr. Perkinson's full compliance with the requirements of Rule 11 and its safe harbor provision. Accordingly, although the trial court did not expressly address it, the court made an implied determination that Mr. Perkinson was not required to satisfy all the procedural obstacles of Rule 11 to receive an award of attorney's fees. The petitioners have questioned this ruling on appeal.

The plain language of Tennessee Code Annotated § 8-47-122(b) provides that a "complainant may be taxed for costs and attorney fees pursuant to Rule 11 of the Tennessee Rules of Civil Procedure, if the complaint or petition is withdrawn or if the court finds the charges alleged to be without merit." As Mr. Perkinson points out, one of the concerns with a plain reading of this statutory section is that Rule 11 does not provide for an award of sanctions when the offending pleading is withdrawn within the safe harbor period provided in Rule 11.03(1)(a), which states in pertinent part:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

(Emphasis added.)

This Court has previously recognized that the "21-day 'safe harbor' provision . . . serves the important dual role of providing attorneys notice and fair warning that an adversary is proposing to seek sanctions" and acts "as a deterrent to frivolous, unsupported, or otherwise improper pleadings being filed with the court in the first place." *Mitrano v. Houser*, 240 S.W.3d 854, 862 (Tenn. Ct. App. 2007). Accordingly, if the improper pleading is withdrawn within the safe harbor period, the motion for sanctions is never filed with or adjudicated by the court, and the offending party is afforded "the opportunity to avoid sanctions." *See Biggers v. Houchin*, No. M2008-01356-COA-R3-CV, 2009 WL 2176567, at *6 (Tenn. Ct. App. July 21, 2009); *see also Justice v. Nelson*, No. E2022-01540-COA-R3-CV, 2023 WL 6532955, at *10 (Tenn. Ct. App. Oct. 6, 2023) (explaining that "a trial court cannot rule on a Rule 11 motion if the defendant filed the Rule 11 motion after the plaintiff already filed a notice of voluntary dismissal within the safe harbor period."). Sanctions also cannot be awarded when the party alleging a violation of Rule 11 fails to comply with the safe harbor requirement found in Rule 11.03. *See Justice*, 2023 WL 6532955, at *11.

We must therefore determine what the legislature intended when providing in § 8-47-122(b) that a "complainant may be taxed for costs and attorney fees pursuant to Rule 11 of the Tennessee Rules of Civil Procedure" while also stating that such costs and attorney's fees can be assessed "if the complaint or petition is withdrawn," as occurred in the instant case. The petitioners urge that if the safe harbor requirement in Rule 11.03 is not met, costs and attorney's fees cannot be assessed in any case. Mr. Perkinson counters that requiring compliance with the safe harbor provision is not feasible in ouster suits, which are meant to be adjudicated in an expedited manner, and that failure to allow sanctions when an offending petition is withdrawn would frustrate the cost-shifting purpose undergirding § 8-47-122(b).

This Court has located only one opinion that mentions Tennessee Code Annotated § 8-47-122(b): *State v. Stiers*, 571 S.W.3d 706, 709 n.2 (Tenn. Ct. App. 2018). However, although this Court referenced Tennessee Code Annotated § 8-47-122(b) in that matter, the *Stiers* Court did not analyze or interpret its meaning. In *Stiers*, the trial court had dismissed an ouster petition as moot after the defendant official was defeated in an election before the petition could be adjudicated. *See id.* at 708. Accordingly, the trial court had denied the defendant's request for an award of attorney's fees pursuant to § 8-47-122(b). The trial court had found, *inter alia*, that such request was improper because the complaint had not been withdrawn and the court had not found the charges to be without merit. *See id.* The trial court had also noted that "a Rule 11 motion ha[d] not been filed" and "even if a Rule 11 [m]otion had been filed, compliance with 11.03(1)(a) would be impossible since the Complaint has already been dismissed[.]" *Id.*

On appeal, the *Stiers* Court noted that although Mr. Stiers had attempted to raise an issue regarding the application of § 8-47-122(b), Mr. Stiers's argument was "somewhat difficult to understand." The Court then stated:

> As best as we can discern from his brief, Mr. Stiers perhaps appears to be of the belief that section 8-47-122(b) only concerns liability for costs and does not provide any standard for the assessment of attorney's fees against an ouster complainant. We would note, however, that the statute plainly states that "the complainant may be taxed for costs and *attorney fees* pursuant to Rule 11 of the Tennessee Rules of Civil Procedure, *if* the complaint or petition is withdrawn or if the court finds the charges alleged to be without merit." Tenn. Code Ann. § 8-47-122(b) (emphases added). As we read the trial court's order, the trial court simply held that no attorney's fees could be recovered under that statute in this case because, among other things, there had been neither a withdrawal of the complaint nor a determination that the charges were without merit. Mr. Stiers acknowledges that these circumstances are not present, and he also states that his assignment of error "is not a 'true' appellate issue." To the extent that an issue has been raised, which, again, it is somewhat unclear what the specific grievance is, we are

of the opinion that there is no reversible error on account of the trial court's discussion of section 8-47-122.

*Id.* at 709 n.2. Accordingly, the *Stiers* Court did not address the issue presented here regarding the interplay between Rule 11's requirements and the remaining language in § 8-47-122(b) concerning an award of attorney's fees when the complaint is withdrawn.

Our Supreme Court has declared that a statute is ambiguous "[w]here [the] language . . . is susceptible of more than one reasonable interpretation." *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001). Our review of the language of § 8-47-122(b) and the parties' contentions regarding its meaning have convinced us that such ambiguity exists here. We also note the potential conflict between the phrase "pursuant to Rule 11 of the Tennessee Rules of Civil Procedure" and the subsequent provision allowing for sanctions when the petition is withdrawn, a remedy that does not comport with Rule 11's safe harbor provision. Therefore, in interpreting this ambiguous statute, we will "consider and discern legislative intent" from other sources, "'such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute.'" *Brown*, 563 S.W.3d at 199.

We begin by analyzing the purpose of Tennessee's ouster statutes. As this Court has previously clarified:

> When considering the removal of a public official from office pursuant to "the ouster statute" contained in Title 8, Chapter 47, we have noted that the purpose of the statute is two-fold. First, it provides a mechanism to "'rid the public of unworthy officials.'" *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000) (quoting *State ex rel. Milligan v. Jones*, 143 Tenn. 575, 577, 224 S.W. 1041, 1042 (1920)). Second, the statute seeks "'to improve the public service, and to free the public from an unfit officer.'" *Id.* (quoting *State v. Howse*, 134 Tenn. 67, 78, 183 S.W. 510, 513 (1915)). However, "'ouster proceedings should not be brought unless there is a clear case of official dereliction.'" *State ex rel. Carney v. Crosby*, 255 S.W.3d 593, 597 (Tenn. Ct. App. 2008) (quoting *Tennessee ex rel. Leech v. Wright*, 622 S.W.2d 807, 818-19 (Tenn. 1981) (citing *State ex rel. Wilson v. Bush*, 141 Tenn. 229, 208 S.W. 607 (1919); *McDonald v. Brooks*, 215 Tenn. 535, 387 S.W.2d 803 (1965))).

*Comm's of Powell-Clinch Util. Dist. v. Util. Mgmt. Review Bd.*, 427 S.W.3d 375, 385-86 (Tenn. Ct. App. 2013).

This Court has recognized that because the ouster statutes "reflect the General Assembly's deep concerns regarding allegations of misconduct by public officials," the

- 11 -

statutes "establish special, <u>expedited</u> judicial procedures for the removal of errant officials." *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000) (emphasis added). The ouster statutes exhibit a recurring theme suggesting that time is of the essence. *See* Tenn. Code Ann. § 8-47-103 (West 1915 to current) ("It is the duty of the attorney general . . . forthwith to investigate such complaint" and "such person shall forthwith institute proceedings" if the investigation finds reasonable cause); § 8-47-115 ("The petition and answer shall constitute the only pleadings allowed" and "if such petition or complaint is held to be insufficient in form, the same shall be amended at once, and such amendment shall not delay the trial of the case."); § 8-47-119 (providing that ouster proceedings "shall have precedence over civil and criminal actions" and that continuances by agreement are prohibited). Moreover, a hearing concerning a motion to suspend a public official filed pursuant to the ouster statutes can be "held on as little as five (5) days' notice." *See Looper*, 86 S.W.3d at 198 (citing Tenn. Code Ann. § 8-47-117). Indeed, "the legislature intended ouster actions to be conducted in speedy summary proceedings." *See Looper*, 86 S.W.3d at 198.

Tennessee Code Annotated § 8-47-122(b) was added to the ouster statutes in 1997. Prior to the enactment of subsection (b), this Court had interpreted the first paragraph of § 8-47-122 (now designated as subsection(a)), as precluding an award of attorney's fees to a clerk and master who had successfully defended against an action seeking her removal. *See Marshall v. Sevier Cnty.*, 639 S.W.2d 440, 443 (Tenn. Ct. App. 1982). Accordingly, it appears that subsection (b) was enacted to allow for an award of attorney's fees to a defendant who prevails in an ouster suit. *See Brown*, 563 S.W.3d at 199 ("We presume that the General Assembly . . . knows the state of the law . . . at the time it enacts new statutes."). In addition, the caption of § 8-47-122 simply reads, "[w]ho is liable for costs[.]"

Finally, we consider the legislative history of Tennessee Code Annotated §8-47-122(b), which demonstrates that when subsection (b) was proposed as an addition to the then-existing § 8-47-122, the original sponsors in both houses of the Tennessee General Assembly stated that the purpose of the bill was simple: it provided that the petitioner in an ouster suit could be assessed costs and attorney's fees if the petition was withdrawn or found to be without merit. No mention of Rule 11 was made in the initial version of the bill. However, when the bill came before the Senate on April 30, 1997, Senator Keith Jordan introduced an amendment adding the reference to Rule 11. Senator Jordan explained that the reference was "language provided by the bar association" and that it would bring the statute "in line with Tennessee law as opposed to carving out an exception according to the English rule."[2] When questioned regarding the reference to Rule 11,

---

[2] The "English rule" has been described as a doctrine wherein the losing party in a lawsuit is assessed the "costs" of the suit, including attorney's fees. *See Barrett v. Town of Nolensville*, No. M2010-01173-COA-R3-CV, 2011 WL 856923, at *2 (Tenn. Ct. App. Mar. 10, 2011) (explaining that "the rule became established in England long before the American Revolution that, except in some cases where the plaintiff recovers only trivial damages, the party who wins a lawsuit is entitled to recover from the losing adversary the 'costs' of the litigation.").

Senator Jordan explained that the purpose behind Rule 11 was to assess attorney's fees against any person who filed a lawsuit that was without merit. The amendment was adopted, and the amended bill passed both houses of the General Assembly, taking effect on May 15, 1997.

Before reaching a conclusion regarding the proper interpretation of Tennessee Code Annotated § 8-47-122(b), we must also consider the purpose and history of Rule 11 as a part of the "broader statutory scheme" that was known to the legislature at the time § 8-47-122(b) was enacted. *See Brown*, 563 S.W.3d at 199 ("We presume that the General Assembly has knowledge of its prior enactments and knows the state of the law and the existence of other statutes relating to the same subject at the time it enacts new statutes."). Rules 11.01 and 11.02 provide that when an attorney signs, submits, or advocates for a pleading, that attorney represents to the court that "to the best of the person's knowledge, information, and belief, formed after" reasonable inquiry, the pleading is not being presented for any improper purpose, is warranted by existing law, and maintains evidentiary support for the factual allegations or denials. Rule 11.03 provides that if the court determines that a violation of Rule 11.02 has occurred, the court may impose sanctions upon the attorney responsible for the violation, which may include attorney's fees. As previously discussed, Rule 11.03 also requires that the opposing party serve a motion for sanctions upon the offending party and allow twenty-one days for the offending pleading to be amended or withdrawn before filing the motion for sanctions with the court.

As this Court has explained:

> When an attorney signs a motion, document, or other paper submitted to the court, he certifies to the court that he has read it, that he has reasonably inquired into the facts and law it asserts, that he believes it is well-grounded in both fact and law, and that he is acting without improper motive. *Andrews v. Bible*, 812 S.W.2d 284, 287 (Tenn. 1991). The purpose of Rule 11 sanctions is to emphasize to the attorney that his signature is not meaningless, but conveys a message to the court for which he alone is responsible. *Andrews*, 812 S.W.2d at 288. Rule 11 establishes that an attorney who signs such a paper without the required belief is subject to appropriate sanction by the court. *Id.* It has been characterized by this State's Supreme Court as a "potent weapon that can and should be used to curb litigation abuses." *Id.* at 292.

*Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001).

Based on our careful review of the above sources, we conclude that the reference to Rule 11 contained within Tennessee Code Annotated § 8-47-122(b) reflects the General Assembly's desire to make this fee-shifting provision in the ouster statutes consistent with the general purpose of Rule 11, which is to permit an award of costs and attorney's fees as

- 13 -

a sanction for violation of Rule 11.02. In other words, it appears that the Tennessee legislature intended to provide for an award of attorney's fees to a defendant when the complainant had either filed a meritless ouster suit or had withdrawn the suit (perhaps suggesting an improper purpose behind the filing). However, we also determine that the General Assembly did not intend that such a defendant should be required to comply with every procedural requirement of Rule 11; specifically, the safe harbor provision of Rule 11.03. Given the speed and urgency with which ouster suits are to be conducted, *see Looper*, 86 S.W.3d at 198, insisting upon such compliance would frustrate the legislature's goal.

In addition, providing for a safe harbor period within which a meritless petition could be withdrawn and an award of sanctions avoided would eviscerate the purpose for which Tennessee Code Annotated § 8-47-122(b) was enacted and would render meaningless the phrase, "if the complaint or petition is withdrawn or if the court finds the charges alleged to be without merit." We accordingly conclude that the only way to "avoid[] statutory conflict and provide[] for harmonious operation of the laws," *see Brown*, 563 S.W.3d at 199, is to construe § 8-47-122(b) as requiring compliance with the spirit of Rule 11 but not its procedural impediments. To hold otherwise would defeat the purpose of this fee-shifting statute and would render a result wherein Rule 11 would be the sole avenue for seeking an award of costs and attorney's fees in these actions, thus rendering this statutory section meaningless.

## VI. Application of Tennessee Code Annotated § 8-47-122(b)

Most of the remaining issues raised by the parties relate to the proper application of Tennessee Code Annotated § 8-47-122(b). The trial court assessed attorney's fees against Dr. Pelley and Mr. Irion predicated in part on § 8-47-122(b), finding that the petition had been voluntarily withdrawn and that "there was never a factual or legal basis to have brought this action."

Although § 8-47-122(b) provides for an award of attorney's fees and costs when the petition is withdrawn, we have determined that it also requires demonstration of some level of accountability by the petitioners in accordance with the purpose of Rule 11. This necessitates a finding that Rule 11's general requirements—that pleadings not be presented for any improper purpose, be warranted by existing law, and that the factual allegations or denials found therein maintain evidentiary support—have been violated, even when the petition is voluntarily withdrawn. *See* Tenn. R. Civ. P. 11.02.

Here, the trial court found that the various petitioners' deposition testimonies revealed that they did not realize that Mr. Irion was purporting to represent them, had never seen the ouster petition, and/or did not understand the relief sought by the petition. The court determined that the petition had specifically stated that Mr. Irion was representing all the petitioners when such was clearly not the case. The court also found that the

- 14 -

declarations signed by the petitioners had been prepared by Mr. Irion, that most had been signed in blank form, and that many of the petitioners had signed their declarations before the City Council meeting at issue had taken place.

The trial court further articulated that it had "great concerns that this entire lawsuit was represented to the court to have been filed by people that did not even know a lawsuit was being filed, much less what the subject matter or issue of the lawsuit was." Following lengthy factual findings concerning the testimony of the petitioners and the court's review of the filed declarations, the court concluded that Mr. Irion had filed a petition that was "not only legally wrong, it was a willful misrepresentation to the court." The court determined that Mr. Irion, acting in concert with Dr. Pelley, had violated Tennessee law by filing the petition, that the petition had not been filed in good faith, and that sanctions were warranted inasmuch as "T.C.A. § 8-47-122(b) is intended to prevent this exact type of wrong." The court therefore imposed sanctions in the form of an award of attorney's fees to Mr. Perkinson in the amount of $48,682.92, as well as an award of discretionary costs totaling $6,993.35. The court directed that the sanctions and costs were to be paid by Mr. Irion and Dr. Pelley.

A. Trial Court's Factual Findings

In their first two issues presented, the petitioners contend that the trial court erred by finding that the petitioners had falsely verified facts in the petition when the petitioners did not expressly state in their declarations that they were verifying those facts. We review the trial court's findings of fact *de novo*, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).

Dr. Pelley filed a signed "verification" with the ouster petition, which stated in pertinent part:

I have reviewed each factual allegation set forth within this Petition for Ouster of Bo Perkinson from his position as City Council Member.

I have personal knowledge of each factual allegation set forth herein, to wit, I was personally present at the August 16, 2022, monthly meeting of the Athens City Council, and I have been a Member of the Athens City Council for over 20 years, thereby I personally witnessed all facts set forth herein.

Each one of the factual allegations set forth in this Petition is true and correct to the best of my knowledge and recollection.

I declare under penalty of perjury that all facts alleged herein are true and correct to the best of my knowledge and recollection.

- 15 -

(Paragraph numbering omitted.)

By contrast, the declarations of the remaining petitioners ("the Relators") are identical in form, stating:

DECLARATION

I, _____, declare as follows:

1.      This declaration was prepared for me by attorney Van Irion.

2.      I have read and agree with all the facts set forth herein, and I have personal knowledge of same.

3.      As a resident of the City of Athens, Tennessee, it is my desire to be included as one of the ten or more individual "freeholders" required to file the above-entitled petition, pursuant to T.C.A. § 8-47-110.

4.      My address, as set forth below my signature, is correct as of the date of this declaration.

I declare under penalty of perjury that the facts set forth above are true to the best of my knowledge.

Date:                           _____
                                Signature

                                _____
                                Print Name

                                Home Address:

Upon our review of the Relators' declarations and the deposition testimony of certain individuals filed in the record, we conclude that the preponderance of the evidence does not support the trial court's finding that the statements in the Relators' declarations were blatantly false. The language incorporated in the Relators' declarations only demonstrated that the following facts were verified by the declarant under penalty of perjury: (1) that the declaration was prepared by Mr. Irion; (2) that the declarant had read, agreed with, and possessed personal knowledge of the facts stated "herein"; (3) that the declarant was a resident of Athens and wished to "be included as one of the ten or more individual 'freeholders' required to file the above-entitled petition, pursuant to T.C.A. § 8-47-110," although no petition title or potential ouster defendant was actually mentioned; and (4) that the declarant's specified address was correct.

- 16 -

We agree with the petitioners that the Relators' declarations did not state that their purpose was to verify the facts contained in the petition; rather, the declarations merely stated that the declarant wished to be included as a required "freeholder" in order that a petition could be filed "pursuant to T.C.A. § 8-47-110." Although we are cognizant of the statement contained in the declarations providing that the declarant had read, agreed with, and possessed personal knowledge of the facts stated "herein," we conclude that use of the word, "herein," supports a determination that the facts to which the declarants attested were those stated in the declaration itself. *See* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "herein" as "[i]n this thing (such as a document, section, or paragraph)").

Tennessee Code Annotated § 8-47-110 provides that an ouster petition may be filed "upon the relation of ten (10) or more citizens and freeholders of the state, county, or city, as the case may be, upon their giving the usual security for costs." Nothing in this statutory section expressly requires that these citizens file affidavits verifying the facts stated in the petition. Again, although the wording of the declarations was certainly problematic with reference to an "above-entitled petition" that was not listed, the language utilized does not support a finding that the Relators were actually verifying the facts stated in any such petition.

B.  Award of Sanctions against Dr. Pelley

The trial court appears to have based the award of sanctions in part on its finding that the Relators' declarations purportedly verified facts contained in the ouster petition. The trial court dedicated a significant portion of its order to an explanation concerning the dates of the declarations and the fact that most or all were signed prior to the August 16, 2022 city council meeting at issue. The court also noted that most of the declarants seemed unaware that they were supporting an ouster petition. However, we emphasize that the declarations did not state that their purpose was to verify the facts in the petition. Instead, the language employed in the declarations indicated that the declarants were simply verifying the truth of the facts in the declarations themselves. However, inasmuch as the trial court declined to award sanctions against the Relators individually, it appears that the court acknowledged that the Relators appeared to lack accountability in their actions related to signing the declarations.

The trial court did, however, assess sanctions jointly against Dr. Pelley and Mr. Irion. Because Tennessee Code Annotated § 8-47-122(b) provides that attorney's fees may be assessed against "the complainant," we need only analyze the court's award of sanctions against Dr. Pelley pursuant to the statute. Because Mr. Irion was not a "complainant," the court's assessment of sanctions against him required a separate and different basis and will be addressed in a later section of this Opinion.

- 17 -

With respect to Dr. Pelley, at least one of the Relators testified that he had signed the declaration at Dr. Pelley's urging and that Dr. Pelley "did not tell him that he was signing something concerning something that was allegedly going to happen on August 16, 2022."[3] A couple of others stated that it was Dr. Pelley who had approached them about signing declarations. No other evidence was introduced concerning Dr. Pelley's involvement in the "fraud" that was allegedly perpetrated on the trial court by the filing of the declarations. The trial court's single evidentiary hearing in this matter occurred on September 16, 2022, when the court heard the motion seeking Mr. Perkinson's suspension. The court did not afford Dr. Pelley the opportunity to testify concerning the allegations that he was involved in obtaining the signed declarations before imposing sanctions.

During the September 2022 hearing regarding whether Mr. Perkinson should be suspended, Dr. Pelley testified that Mr. Perkinson had denied him the ability to make motions at city council meetings during the "new business" portion of the meetings for approximately two years. He further testified that Mr. Perkinson had thwarted his efforts to place items on the meeting agendas for two years.

During cross-examination, Dr. Pelley acknowledged that he had not sought to place his motions on the agenda prior to the August 2022 meeting. He further acknowledged that he was allowed to speak for several minutes during the August 2022 meeting and had said "most" of what he wanted to say. When questioned by the trial court, Dr. Pelley again stated that he had not requested to place items on the agenda prior to the August 2022 meeting despite knowing there were steps to be followed to place items on the meeting agenda.

Upon the conclusion of the hearing, the trial court recognized that suspension of an official required a showing of "good cause" and a demonstration that the official had been derelict in his duties. The court found that Dr. Pelley had been candid in his admission that he had failed to follow the procedure for having items placed on the agenda for the August 2022 meeting. The court further found that Dr. Pelley had been allowed to speak at the podium during that meeting either as a council member or as a citizen. The court then concluded that the evidence was insufficient to warrant Mr. Perkinson's immediate suspension. The court made no findings concerning Dr. Pelley's unrefuted testimony that Mr. Perkinson had thwarted his efforts to place items on meeting agendas for two years or that Mr. Perkinson had denied him the ability to make motions at city council meetings during the "new business" portion of the meetings during that same time period.

---

[3] The trial court placed considerable weight on the fact that many of the declarations were dated prior to the August 16, 2022 city council meeting. However, the trial court's emphasis on the August 16, 2022 meeting fails to fully account for Dr. Pelley's assertion in the petition, as well as his testimony in court during the suspension hearing, that his efforts to introduce measures at council meetings had been thwarted by Mr. Perkinson and others for at least two years prior to the August 2022 meeting.

- 18 -

Dr. Pelley alleged in the ouster petition that he had a "large number of motions to be presented" at the August 2022 meeting, which was "directly caused by Defendant Perkinson's denial of Pelley's right to make motions for over two years." Dr. Pelley further alleged that for "at least two years Defendant Perkinson [had] conspired with City Manager Seth Sumner and City Attorney Chris Trew to prevent Council Member Dr. Pelley from having any of Pelley's agenda items appear on the monthly meeting Agenda." However, before a trial could be conducted regarding the allegations in the ouster petition, the petitioners nonsuited the petition. We emphasize that because the suspension hearing was the only evidentiary hearing conducted by the court, the record is limited to the evidence introduced during that hearing and other documentary evidence contained in the appellate record.

Upon careful review of the evidence, we determine that the trial court erred in awarding sanctions against Dr. Pelley. Based on our determination that Tennessee Code Annotated § 8-47-122(b) only allows an award of attorney's fees and costs when the complainant is found to have violated the spirit of Tennessee Rule of Civil Procedure 11, we conclude that the evidence is insufficient to support such a finding in this case. Simply put, we do not find sufficient evidence in the record that the petition was presented for any improper purpose, that it was unwarranted by existing law, or that the factual allegations or denials found therein lacked evidentiary support. *See* Tenn. R. Civ. P. 11.02. Dr. Pelley testified during the suspension hearing that he had been denied the right to place items on the meeting agendas or to make motions during the council meetings for a period of two years, not only at the August 2022 meeting. No other evidence exists in this record to refute Dr. Pelley's testimony in this regard. Accordingly, we are constrained to vacate the trial court's award of attorney's fees as sanctions against Dr. Pelley due to a lack of evidence.

VII. Award of Sanctions against Mr. Irion

With respect to the sanctions awarded against Mr. Irion, we again note that such sanctions could not be awarded pursuant to Tennessee Code Annotated § 8-47-122(b) because Mr. Irion was not the complainant. Moreover, no Rule 11 motion was filed by Mr. Perkinson. Because the trial court stated in its order that it was also awarding sanctions pursuant to its inherent powers, we will analyze the attorney's fee award on that basis.

As this Court has previously explained:

Courts have the inherent power to supervise and control their own proceedings and to sanction attorneys for conducting themselves in a reckless manner. *Andrews v. Bible*, 812 S.W.2d 284 (Tenn. 1991). "[I]t has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer

of the court and, accordingly, has a duty to serve two masters." *Id.* at 291.

*Wright v. Quillen*, 909 S.W.2d 804, 814 (Tenn. Ct. App. 1995). In *Andrews*, our Supreme Court provided further explanation concerning this power, stating:

> Completely aside from Rule 11, the courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner. We note in this regard that it has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters. "Disciplinary powers which English and American courts have for centuries possessed over members of the bar [are] incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied."

*Andrews v. Bible*, 812 S.W.2d 284, 291 (Tenn. 1991) (internal citations omitted).

The trial court grounded its award of sanctions on its finding, *inter alia*, that Mr. Irion had falsely stated in the petition and other pleadings that he represented all the petitioners when, in fact, he had no attorney-client relationship with the Relators and had never met or spoken with many of them. The petitioners assert that Mr. Irion was warranted in relying on the sworn statements of the Relators that the declarations had been prepared by Mr. Irion and that the declarants supported a petition's being filed pursuant to Tennessee Code Annotated § 8-47-110.

As the trial court found, the evidence from the Relators' depositions demonstrated that many of the Relators did not know who Mr. Irion was, had never met or spoken to him, and did not know that he was filing an ouster petition purportedly on their behalf. A few of the Relators testified that Dr. Pelley or a third party had provided them with a blank declaration to sign but that the Relators did not understand what the purpose of the declaration was. We do not reach the question of whether the Relators' signing of these blank declarations, without a true understanding of the declarations' purpose, was advisable or excusable on their part because no sanctions were assessed to the Relators. However, we must address whether Mr. Irion's purported acts of signing the petition and other pleadings as if he represented clients with whom he had no actual professional relationship constituted sanctionable conduct.

The trial court found that Mr. Irion clearly signed the petition for ouster and other pleadings filed in this matter as the "attorney for petitioners." Moreover, the petition stated that it was brought "by and through Relator Petitioners, and their attorney Van R. Irion[.]" Mr. Irion argues that an attorney-client relationship was established between himself and

the Relators by virtue of his preparation of the declarations (in blank) and the Relators' signatures on the declarations, which stated that they had been prepared by Mr. Irion and that the Relators wished to support the filing of a petition pursuant to Tennessee Code Annotated § 8-47-110. In so asserting, Mr. Irion relies on our Supreme Court's decision in *State v. Jackson*, which instructs:

A relationship of client and lawyer arises when:

(1)      a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either

     (a)     the lawyer manifests to the person consent to do so; or

     (b)     the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or

(2)      a tribunal with power to do so appoints the lawyer to provide the services.

444 S.W.3d 554, 600 (Tenn. 2014) (quoting Restatement (Third) of the Law Governing Lawyers § 14 (2000)).

Upon review, we cannot agree with Mr. Irion's interpretation of the *Jackson* opinion. Mr. Irion urges that his willingness and intent to represent the Relators, whomever they might have been, was evinced by his preparation of the declarations. This may very well be true on Mr. Irion's part. However, Mr. Irion's assertion that the Relators had manifested their intent to be represented by him simply by signing the declarations stretches credulity. The declarations, although stating that they were prepared by Mr. Irion, do not expressly state that Mr. Irion would be filing a petition on the Relators' behalf or that the Relators consented to or desired his legal representation. Accordingly, there was no manifestation by the Relators to Mr. Irion of their intent that Mr. Irion provide legal services for them. *See Jackson*, 444 S.W.3d at 599-600 ("The attorney-client relationship is consensual and, significantly, it 'arises only when both the attorney and the client have consented to its formation.'" (quoting *Akins v. Edmondson*, 207 S.W.3d 300, 306 (Tenn. Ct. App. 2006)). As such, we agree with the trial court that Mr. Irion misrepresented his relationship with at least some of the Relators when he filed the ouster petition purportedly on their behalf.

As our Supreme Court has elucidated regarding an attorney's duty when signing and filing pleadings with the courts:

The certification which results from the attorney's signature on a motion, pleading, or other document is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. Schwarzer, "Sanctions Under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181, 186 (1985). *See also*, Note, "The Intended Application Of Federal Rule of Civil Procedure 11: An End To The Empty Head, Pure Heart Defense," 41 Vand. L. Rev. 343, 361-62 (1988). A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive. *Business Guides v. Chromatic Communications Ent.*, 498 U.S. 533, 111 S. Ct. 922, 929, 112 L. Ed. 2d 1140 (1991); *Cooter & Gell v. Hart Marx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 2454, 110 L. Ed. 2d 359 (1990). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the [trial judge] that this document is to be taken seriously." *Business Guides*, 111 S. Ct. at 930. The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. "The message thereby conveyed to the attorney, is that this is not a team effort but in the last analysis, *yours alone*, precisely the point of Rule 11." *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S. Ct. 456, 460, 107 L. Ed. 2d 438 (1989). An attorney who signs a paper without the required substantiated belief "shall" be penalized by "an appropriate sanction." This sanction may, but need not, include payment of the other party's expenses. Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, *see* Advisory Committee notes, any interpretation must give effect to the rule's central goal of deterrence. *Cooter & Gell*, 110 S. Ct. at 2454. *See also*, Note, "The Immediate Appealability of Rule 11 Sanctions," 59 Geo. Wash. L. Rev. 683 (1991) (purpose of Rule 11 is to prevent abusive and dilatory tactics by litigants).

The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances, *Business Guides*, 111 S. Ct. at 933, and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed. 104 F.R.D. at 189. The Advisory Committee notes to the federal version of Rule 11 state that "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]." *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990). One of the clearest and most succinct explanations of the principles associated with a proper Rule 11 analysis was set forth in *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E. D. Ky. 1987):

1.  An attorney must READ every paper before signing it.

2.  He must make a reasonable pre-filing investigation of the FACTS.

3.  He must research the LAW, unless he is certain he knows it.

4.  The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5.  It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

6.  The adequacy of an attorney's investigation, research and legal analysis will be evaluated by the court under an OBJECTIVE STANDARD, namely, whether the attorney acted as a reasonably competent attorney admitted to . . . practice. Except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions. A pure heart but an empty head is of no avail.

\* \* \*

8.  An attorney must not have an IMPROPER PURPOSE, such as harassment or intimidation, in naming any defendant, asserting any legal position or taking any legal step.

9.  If an attorney violates Rule 11 the imposition of some sanction is MANDATORY, although the nature and extent of the sanction is discretionary with the [trial] court.

*Andrews*, 812 S.W.2d at 287-88 (emphasis added).

Reviewing the trial court's assessment of sanctions against Mr. Irion and the circumstances presented herein, we conclude that such sanctions were warranted. Mr. Irion has repeatedly acknowledged to the trial court and in his appellate brief that he did not speak to the Relators before filing the ouster petition and instead relied on their acknowledgements in the declarations to establish an attorney-client relationship and to support his filing of the petition while purporting to represent them. As the *Andrews* Court pointed out, however, Mr. Irion had a nondelegable duty to investigate the facts upon which the petition was based. *See id.* at 287. This would have included investigating whether the Relators understood the purpose of the signed declarations and whether they wished to establish an attorney-client relationship with him before he filed the petition with the court stating that he represented them. This he clearly failed to do.

The trial court determined that Mr. Irion's conduct was reckless. Our Supreme Court has defined reckless conduct as "when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Mr. Irion, as a licensed attorney, is charged with knowledge concerning the effect of his signing and filing pleadings with a Tennessee court. Applying the Supreme Court's pronouncements in *Andrews*, we determine that Mr. Irion knew or should have known that he maintained a duty to investigate the facts underlying the allegations in the petition, including whether he was authorized to represent to the court that he was acting on behalf of all the Relators. By failing to perform an adequate pre-filing investigation, he disregarded the risk that the Relators might have been uninformed about the effect of signing the declarations, the filing of an undisclosed petition, or Mr. Irion's representation of the existence of an attorney-client relationship. We conclude that the evidence supports the trial court's finding that Mr. Irion's conduct was reckless and its award of sanctions on that basis pursuant to the court's inherent powers. *See Andrews*, 812 S.W.2d at 291 ("[T]he courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner.").

We note that Mr. Irion has not raised an issue respecting the amount of the trial court's award of attorney's fees. Based on the trial court's analysis of the RPC 1.5 factors and its determination that the attorney's fees awarded were reasonable and warranted, we affirm the trial court's award of sanctions against Mr. Irion.

VIII.  Purported Nullification of Tennessee Code Annotated § 8-47-110

As their final issue, the petitioners claim that the trial court effectively nullified the ouster statutes by stating, in its August 2023 order regarding sanctions, that "the proper

remedy to remove Mr. Perkinson, or anyone else similar situated from office, was and is in fact an election."

In order to properly assess the trial court's statement, we will analyze it in context. The paragraph wherein this statement appears is located near the end of the trial court's order following lengthy findings concerning the high burden of proof for a complainant to oust an official from office, Mr. Irion's conduct, and the Relators' deposition testimony. The entire paragraph reads as follows:

> Based upon all of the above, the court finds that the declarations and the lawsuit were filed by Attorney Van R. Irion purporting to represent people who he had never met, nor had he ever explained the verified petition and motion to. The court finds that many of these declarants had never spoken to, or with, Mr. Irion at any time, nor had they heard of him until the day of their deposition, which was much later than the date of the filing of the verified petition and motion filed by Mr. Irion. The court finds that the filing of the ouster petition under these circumstances, was not only legally wrong, it was a willful misrepresentation to the court. The court finds that the filing of this petition, given all of the facts and circumstances now before the court, is a direct violation of Tennessee case law and statutes. The court acted initially upon the good faith belief that the verified petition for writ of ouster, as well as the accompanying motion/application for immediate suspension pending trial on petition for ouster, were filed in good faith and pursuant to law as presented. The court finds, now, that this is not the case. The court finds that T.C.A. § 8-47-122(b) is intended to prevent this exact type of wrong. Based upon all of the findings set out herein, the court shall impose sanctions. The court finds that the proper remedy to remove Mr. Perkinson, or anyone else similarly situated from office, was and is in fact an election. The court finds, based upon the declarations and all of the facts and evidence before the court, that there was never a factual or legal basis to have brought this action. The court finds this is a political issue, or possibly a declaratory judgment issue.

The petitioners contend that by referencing an election as the "proper remedy" for removing an official from office, the trial court evinced an intent to ignore the effect of the ouster statutes and the remedy they provide for removing an official from office. We disagree. The trial court had previously ruled that Mr. Perkinson had not been derelict in his official duties and should not be suspended. Accordingly, reading the court's statement in context, it is clear that the trial court was referencing the removal of an official such as Mr. Perkinson or anyone "similarly situated" when the court had found no dereliction of duties sufficient to warrant removal. We therefore determine this issue to be without merit.

- 25 -

## IX.  Attorney's Fees on Appeal

Mr. Perkinson urges that he should receive an award of attorney's fees on appeal pursuant to (1) Tennessee Code Annotated § 8-47-122(b), (2) the inherent power of the Court, or (3) Tennessee Code Annotated § 27-1-122 for a frivolous appeal.  However, inasmuch as the petitioners (or Dr. Pelley at least) were partially successful on appeal, we decline to award additional attorney's fees to Mr. Perkinson pursuant to § 8-47-122(b) or the Court's inherent power, and we do not find this appeal to be frivolous or without merit. *See Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) ("A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed." (quoting *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)).

## X.  Motions to Consider Post-Judgment Facts

Mr. Perkinson has filed motions asking this Court to consider post-judgment facts. Specifically, Mr. Perkinson asserts that we should consider the "recent entry of another judgment involving Appellant Van Irion concerning his conduct relating to Appellee Bo Perkinson," wherein Mr. Irion purportedly had "been drastically sanctioned by the U.S. District Court for the Eastern District of Tennessee"; "suspended from the practice of law in that Federal Court for a period of five years . . . and was ordered to write an apology letter to, among others, Appellee Perkinson."  According to Mr. Perkinson, this judgment demonstrates that "even the sanction imposed by the Trial Court below was insufficient to deter the same misconduct by the same person against the same victim."  Mr. Perkinson encourages this Court to assess further sanctions against Mr. Irion that will deter future misconduct.

As this Court has previously explained:

> Pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure, this Court may consider facts occurring after the judgment in the trial court. *See* Tenn. R. App. P. 14(a) ("The Supreme Court, Court of Appeals, and Court of Criminal Appeals on its motion or on motion of a party may consider facts concerning the action that occurred after judgment.").  According to Rule 14:

> > While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters.

Tenn. R. App. P. 14(a). This Court's decision to grant or deny a motion to consider post-judgment facts is discretionary. Motions to consider post-judgment facts are governed by Rule 22's motion practice. Tenn. R. App. P. 14(b) ("A motion in the Supreme Court, Court of Appeals, or Court of Criminal Appeals to consider post-judgment facts pursuant to subdivision (a) of this rule shall be made in the manner provided in rule 22."). The Advisory Committee Comments to Rule 14 indicate that post-judgment facts are appropriate for consideration when they are "unrelated to the merits[,] [] not genuinely disputed, [and] necessary to keep the record up to date.

*Stacey Fair v. Clarksville Montgomery Cnty. Sch. Sys.*, No. M2017-00206-COA-R3-CV, 2017 WL 4773424, at *2 (Tenn. Ct. App. Oct. 23, 2017). However, "[c]aselaw interpreting Tenn. R. App. P. 14 explains that, while an appellate court has the discretion to consider post-judgment facts, the appropriate post-judgment facts to be considered are "those facts 'capable of ready demonstration, affecting the positions of the parties or the subject matter.'" *McCall v. United Parcel Serv.*, No. M2022-01112-COA-R3-CV, 2023 WL 3453650, at *2 (Tenn. Ct. App. May 15, 2023) (quoting *Hall v. Bookout*, 87 S.W.3d 80, 87 (Tenn. Ct. App. 2002)).

Based upon our review of Mr. Perkinson's motions, we conclude that the facts that Mr. Perkinson has asked us to consider are not appropriate for consideration under Rule 14. Although the facts do not "affect[] the positions of the parties or the subject matter," they are related to the merits of this case. Mr. Perkinson has asked us to consider the details of the federal court's sanctions assessed against Mr. Irion as bearing on the question of sanctions assessed against Mr. Irion in this matter. Accordingly, Mr. Perkinson is requesting that we consider the later judgment as it influences the substantive outcome of this case. Tennessee Rule of Appellate Procedure 14 does not permit a party to relitigate disputed issues by placing before the appellate court evidence not heard by the trial court. *Duncan v. Duncan*, 672 S.W.2d 765, 768 (Tenn. 1984) (denying consideration of "pleadings and other matters concerning a subsequent suit between the same parties" and ruling that when "the pleadings of another case are irrelevant to the case on appeal, a Rule 14 motion is appropriately denied."). We therefore conclude that the post-judgment facts presented by Mr. Perkinson are not appropriate for consideration under Rule 14, and we deny the motions.

XI. Conclusion

For the foregoing reasons, we affirm the trial court's award of sanctions against Mr. Irion, but we vacate the court's award of sanctions against Dr. Pelley due to a lack of sufficient evidence. We further decline to award additional attorney's fees on appeal. This case is remanded to the trial court for enforcement of the trial court's judgment and

collection of costs below.  Costs on appeal are taxed one-half to the appellant, Van Irion, and one-half to the appellee, Bo Perkinson.


s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE